ROOT & REBOUND REENTRY ADVOCATES
Amanda Carlin (SBN 348230)
Joshua E. Kim (SBN 257260)
Sarah True (SBN 345847)
1730 Franklin Street, Suite 300
Oakland, CA 94612
Tel: (510) 279-4662
Email: acarlin@rootandrebound.org
        jkim@rootandrebound.org
        strue@rootandrebound.org

LEGAL AID AT WORK
Molly Lao (SBN 339621)
Sabina Crocette (SBN 197134)
Stacy Villalobos (SBN 306710)
180 Montgomery Street, Ste. #600
San Francisco, CA 94104
Tel: (415) 864-8848
Email: mlao@legalaidatwork.org
        scrocette@legalaidatwork.org
        svillalobos@legalaidatwork.org

*Attorneys for Plaintiff*
JANE ROE

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/08/2024 8:18 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Gnade, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES
## UNLIMITED JURISDICTION

| | |
|---|---|
| JANE ROE,<br><br>Plaintiff,<br><br>v.<br><br>DISA GLOBAL SOLUTIONS, INC; JCL SAFETY SERVICES; AIR PRODUCTS AND CHEMICALS, INC; PHILLIPS 66; NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM; HEALTH AND SAFETY COUNCIL; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 24STCV20158<br><br>**VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION**<br><br>1-2. Criminal History Discrimination in Violation of the California Fair Chance Act, California Government Code §12952, et seq.;<br><br>3-4. Race Discrimination in Violation of the California Fair Employment and Housing Act, as amended, California Government Code § 12940, et seq.;<br><br>5-6. Procedural and Substantive Protection Discrimination in Violation of the California Investigative Consumer Reporting Agencies Act, Cal Civ. Code § 1786.12, et. seq.<br><br>**DEMAND FOR JURY TRIAL** |

Case No.
VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

Plaintiff JANE ROE (hereinafter "Plaintiff") complains against Defendants DISA GLOBAL SOLUTIONS, INC. ("DISA"); JCL SAFETY SERVICES ("JCL"); AIR PRODUCTS AND CHEMICALS, INC. ("Air Products"); PHILLIPS 66 COMPANY ("Phillips 66"); NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM ("NABSC"); HEALTH AND SAFETY COUNCIL ("HASC") and DOES 1-10 (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for relief from employment discrimination and consumer protection violations under the California Fair Employment and Housing Act ("FEHA"), the California Fair Chance Act ("Fair Chance Act"), and the California Investigative Consumer Reporting Agencies Act ("ICRAA").

2.    By this Complaint, Plaintiff challenges Defendants' decision, made pursuant to their policy and practice, to deny her employment based solely on her prior conviction. Denying her employment on this basis, particularly without making an individualized assessment, violates the Fair Chance Act and the FEHA.

3.    Plaintiff alleges that Defendants' background screening policy and practice of denying employment to otherwise qualified applicants based solely on a prior conviction unlawfully discriminated against her on the basis of race, and that Defendants' policies, practices, and decisions have a disparate impact upon particular racial groups, such as African American applicants.

4.    Plaintiff also alleges that Defendants' background screening policy and practices violate her rights under the Fair Chance Act.

5.    Plaintiff was denied employment because of a conviction from over 30 years ago. Because of this conviction—and based solely on this conviction—Defendants decided to revoke her job offer to work at an oil refinery, a job she had previously successfully performed.

6.     Defendants maintain a policy and practice of evaluating a person's conviction history and assigning potential employees a background screen grade (from 00-07) based solely on the applicant's conviction history.

1                    Case No:.
VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

7. Defendants' background screening policy reduces applicants to a mere number, and operates as a blanket ban that indiscriminately excludes Plaintiff and other workers from positions for which they are well-qualified, in violation of the aforementioned laws.

8. Defendants' background screening policy excludes African American candidates and candidates with convictions, such as Plaintiff, ignoring not only the amount of time that has passed since the conviction, but also all mitigating or rehabilitative evidence while exclusively considering past convictions.

9. Plaintiff has successfully worked at oil refineries for approximately 4 years. She has passed a U.S. Department of Homeland Security background check and possesses a Transportation Worker Identification Credential ("TWIC card") that makes her eligible to work at and access secure locations like oil refineries.

10. Defendants bar Plaintiff from employment not only from the original position she was offered, but also at any oil refinery that is a member of Defendants DISA, NABSC or HASC's, consortiums, solely on the basis of her March 13, 1993 conviction, by sharing her background screen grade among consortium members without a permissible purpose required by the ICRAA.

11. Plaintiff and other applicants with conviction histories, disproportionately including African American applicants, have routinely been, and will continue to be, denied hire by Defendants because of Defendants' policy.

12. The use and development of this policy violates the statutory protections under existing laws. Defendants fail to abide by the legally required procedural protections afforded to applicants by the Fair Chance Act and existing consumer protection laws.

13. Plaintiff seeks injunctive and declaratory relief, compensatory damages, emotional distress damages, punitive damages, and her reasonable attorneys' fees and litigation expenses as remedies for Defendants' violations of her rights.

## **PARTIES**

14. Plaintiff is, and at all times relevant herein was, a resident of the County of San Bernardino in the State of California and is African American.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

15.     Defendant JCL SAFETY SERVICES LLC. ("JCL") is, and at all times herein mentioned was, a California limited liability company headquartered in the State of Oklahoma and doing business in the State of California. At all times relevant herein, JCL had at least five employees and was an "employer" within the meaning of the FEHA and the Fair Chance Act.

16.     Defendant DISA GLOBAL SOLUTIONS, INC. ("DISA") is, and at all times herein mentioned was, a Delaware corporation headquartered in the State of Texas and doing business in the State of California as a registered foreign corporation. Defendant DISA has offices in multiple locations in the State of California. At all times relevant herein DISA had at least five employees and was an "employer" and third-party interferer within the meaning of the FEHA and the Fair Chance Act. Alternatively, DISA is an agent of the other Defendants, including an agent of the employer, directly or indirectly.

17.    Defendant    NORTH    AMERICAN    BACKGROUND    SCREENING CONSORTIUM ("NABSC") is, and at all times herein mentioned was, an unincorporated association headquartered in the State of Texas. On information and belief, Defendants JCL, Air Products, Phillips 66, and DISA are, and at all times herein mentioned were, members of Defendant NABSC. On information and belief, at all times relevant herein NABSC had at least five employees and was an "employer" and third-party interferer within the meaning of the FEHA and the Fair Chance Act. Alternatively, NABSC is an agent of the other Defendants, including an agent of the employer, directly or indirectly.

18.     Defendant HEALTH AND SAFETY COUNCIL ("HASC") is, and at all times herein mentioned was, a nonprofit organization headquartered in the State of Texas. HASC is, and at all times herein mentioned was, the Program Custodian for the NABSC. HASC at all times relevant herein had at least five employees and was an "employer" and third-party interferer within the meaning of the FEHA and the Fair Chance Act. Alternatively, HASC is an agent of the other Defendants, including an agent of the employer, directly or indirectly.

19.     Defendant AIR PRODUCTS AND CHEMICALS, INC. ("Air Products") is, and at all times herein mentioned was, a Delaware corporation headquartered in the State of Pennsylvania and doing business in the State of California as a registered foreign corporation,

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

operating facilities in multiple locations throughout the state. At all times relevant herein Air Products had at least five employees and was an "employer" and a third-party interferer within the meaning of the FEHA and the Fair Chance Act. Alternatively, Air Products is an agent of the other Defendants, including an agent of the employer, directly or indirectly.

20.    Defendant PHILLIPS 66 COMPANY ("Phillips 66") is, and at all times herein mentioned was, a Delaware corporation headquartered in the State of Texas and doing business in the State of California as a registered foreign corporation. Defendant Phillips 66 operates facilities in multiple locations throughout the State of California. At all times relevant herein Phillips 66 had at least five employees and was an "employer" and third-party interferer within the meaning of the FEHA and the Fair Chance Act. Alternatively, Phillips 66 is an agent of the other Defendants, including an agent of the employer, directly or indirectly.

21.    Defendants DOES 1-10 are persons or entities whose true names and capacities are presently unknown to Plaintiff, who therefore sues them under such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants perpetrated some or all of the wrongful acts alleged in this Complaint, is responsible for the harm alleged, and is jointly and severally liable to Plaintiff. Plaintiff will amend this Complaint to state the true names and capacities of such fictitiously named defendants if and when they are ascertained.

22.    At all times alleged herein each defendant was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment. At all times alleged herein each defendant was a "person acting as an agent of an employer, directly or indirectly."[1] Accordingly, the defendants are jointly and severally liable to Plaintiff.

## PROCEEDING AS JANE ROE

23.    Plaintiffs may proceed pseudonymously in California courts to prevent unjustified intrusions to their privacy rights and to prevent likely harm and retaliation from future employers and other third parties.

24.    Plaintiff reasonably fears harm if her true name is revealed. A substantial number

---

[1]  Gov. Code § 12940(j)(4)(A).

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

of employers associate criminal records with a range of undesirable characteristics,[2] and people

with conviction histories face significant stigma.

25.    Plaintiff also reasonably fears that she will face intrusions to her privacy rights and

suffer harm if her identity is revealed because it will be even harder than it is now for her to obtain

future employment as a result of her asserting her rights to fair treatment under the law in this

matter.

26.    Plaintiff's anonymity does not prejudice Defendants. She does not seek to maintain

anonymity from the Defendants, but only from public records associated with this case.

## VENUE AND JURISDICTION

27.    Venue is proper in this Court because a substantial part of the events or omissions

giving rise to the claims alleged herein occurred in the County of Los Angeles, Plaintiff would

have worked in the County of Los Angeles, and the amount of damages sought in this matter

exceeds the minimum jurisdiction of this Court.

28.    The amount in controversy exceeds the jurisdictional minimum of this Court.

## SUMMARY OF RELEVANT LAW

29.    California's Fair Chance Act went into effect and became a part of the Fair

Employment and Housing Act ("FEHA") on January 1, 2018.

30.    The California Legislature noted that at that time, "Roughly seven million

Californians, or nearly one in three adults, have an arrest or conviction record that can

significantly undermine their efforts to obtain gainful employment."[3]

31.    The Legislature recognized that past conviction history is a poor predictor of job

performance and enacts arbitrary barriers to employment.[4] The Fair Chance Act's protections

limiting employers' use of conviction history in the job application process largely fall into two

categories: procedural protections and substantive protections.

---

[2]  Naomi. F. Sugie, Noah D. Zatz & Dallas Augustine, Employer Aversion to Criminal
Records: An Experimental Study of Mechanisms, Criminology 58(1) (2020) pp. 5-34.
[3]  Assem. Bill No. 1008 (2017-2018 Reg. Sess.) § 1(f).
[4]  Assem. Bill No. 1008 (2017-2018 Reg. Sess.) §§ 1(a)-(h).

5                    Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

32.    The Fair Chance Act's *procedural* protections are a form of due process for applicants, requiring that an employer or covered entity: (1) wait until after a conditional job offer to ask about or access criminal history information; (2) make an "individualized assessment" of the candidate's conviction history; (3) provide a preliminary written notice prior to the withdrawal of a job offer that identifies the disqualifying conviction(s), includes a copy of the conviction history report, explains that the applicant has a right to respond within five business days, and informs the applicant of the type of response they may provide (information challenging the accuracy of the report and evidence of rehabilitation or mitigating circumstances); (4) consider any information submitted by the applicant within the five day period and provide an additional five day period, if requested by the applicant, where the applicant asserts errors in the report; and, (5) provide a final written notice that includes the final denial and informs the applicant of their right to file a complaint with the Civil Rights Department or of any existing procedure the employer has to appeal the decision.[5]

33.    The Fair Chance Act's *substantive* protections provide that an employer or covered entity may not withdraw a conditional offer of employment, unless the applicant's conviction history has a "direct and adverse relationship with the specific duties of the job that justify denying the applicant the position." This evaluation, at a minimum, must include: (1) "the nature and gravity of the offense or conduct"; (2) "the time that has passed since the offense or conduct and completion of the sentence"; and (3) "the nature of the job held or sought."[6]

34.    In enacting the Fair Chance Act, the Legislature intended to create broader protections for people with prior criminal convictions. The Fair Chance Act "differs from the existing law in applying [its] requirement[s] to all applicants [with a criminal history], not just those in a protected class who can demonstrate disparate impact in the criminal justice system."[7]

35.    More broadly, the FEHA protects individuals not only from intentional discrimination but also against facially neutral practices that have an adverse impact on a

---

[5]    Gov. Code §§ 12952(c)(2)-(5).
[6]    Gov. Code §§ 12952(c)(1)(A)(i)-(iii).
[7]    Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1008 (2017-2018 Reg. Sess.) July 11, 2017, p. 8.

Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

protected class and are not justified by business necessity. This includes criminal record exclusions that are not job-related and not justified by a business necessity.

36. As described below, Defendants violated and continue to violate both the procedural and substantive requirements of the Fair Chance Act, as well as the broader protections against discrimination under the FEHA.

37. Existing consumer protection laws also protect the rights of individuals with criminal records in the employment context, prohibiting commercial background check companies from reporting records of convictions that are too old and obsolete to be relevant for employment purposes[8] and from furnishing consumer report information without a permissible purpose.

## **STATEMENT OF FACTS**

A. Summary of Background Screening Policies and Practices

38. Defendants work together to conduct background screening on potential employees.

39. Defendants DISA, NABSC, and HASC developed and implemented programs that establish certain criteria and procedures for the employment and background screening of employees who provide maintenance, construction, and operational support at petrochemical facilities ("Programs"). Attached hereto as Exhibit 1 and incorporated herein by reference is a true and correct copy of the North American Background Screening Consortium policy, (hereinafter "NABSC Policy"), which sets forth the background screen grade definitions and the criminal dispositions in each grade. Attached hereto as Exhibit 2 and incorporated herein by reference is a true and correct copy of the DISA Background Screening Consortium Background Screening Policy (hereinafter "DISA Policy"), which in all relevant parts is identical to Defendant NABSC's policy.

40. Under the Programs, each prospective employee is given a background screen grade of 00-07, based solely on an evaluation of their criminal conviction history by Defendants

---

[8] Civ. Code §§ 1786.18(a)(1)-(8).

Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

NABSC, HASC, and/or DISA.[9]

41.    The background screen grade is based solely on conviction history.

42.    Grade 00 designates a clear record. Grades 01 through 06 designate various levels of criminal dispositions. Grade 07 is for persons on the current Patriot Act/Terrorist Watch List.[10]

43.    According to Defendant DISA, NABSC, and HASC's policies, the scale roughly groups convictions into "non-violent misdemeanors," "violent misdemeanors," "lesser felonies," "higher felonies," a combination of "violent misdemeanors" and "lesser felonies," a combination of "higher felonies" and "violent misdemeanors," and "PATRIOT Act List hits."[11]

44.    Defendants DISA and NABSC further define these categories by providing examples of convictions they sort into the grades.[12]

45.    The Programs' participants are defined as follows:[13]

    i.    "Owner" is defined as the owner of an industrial facility that participates in the Programs and accepts the Programs' screen as a valid background screen. Defendants Air Products and Phillips 66 are Owners.

    ii.    "Contractor Employer" is defined as a Program-approved contractor who directly employs Contractor Employees and assigns those employees to participating Owners. Defendant JCL is a Contractor Employer.

    iii.    "Contractor Employee" is defined as an employee of a Contractor Employer who has consented to background screening as a condition of access to an Owner's facility. Plaintiff is a Contractor Employee.

    iv.    "Consortium Third Party Administrator" ("Consortium TPA") is defined as a company authorized by the Programs to perform

---

[9]    *See* Exh. 1, NABSC Policy at 16; Exh. 2, DISA Policy at 12.
[10]    *See id.*
[11]    *See id.*
[12]    *See* Exh. 1, NABSC Policy at 12-18 (App. C); Exh. 2, DISA Policy at 9-14 (App. C).
[13]    *See* Exh. 1, NABSC Policy at 8-9 (App. A); Exh. 2, DISA Policy at 7 (App. A).

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

background screening, report the results, and manage the "Adverse Action Process." Defendant DISA is a Consortium TPA.

v. The "Program Custodian" is responsible for implementing the Program in accordance with the Program requirements, approving Consortium Third Party Administrators, maintaining a Program Lookup Application, and auditing the Program to assure compliance and effectiveness. Defendant DISA is the Program Custodian for the DISA Program. Defendant HASC is the Program Custodian for the NABSC Program.

46.    Consortium TPAs, such as Defendant DISA, run the background checks and produce background screen grades.

47.    Under the Programs, a Contractor Employee's final background screen grade is based solely on their conviction record. There is no individualized consideration of the facts and circumstances surrounding the conviction, the Contractor Employee's post-conviction conduct and experience, the age of the conviction when assigning a grade, or the nature of the job for which the Contractor Employee applied.[14]

48.    Owners participating in either or both of these Programs, such as Defendants Air Products and Phillips 66, set a threshold maximum background screen grade for potential employees, for example, a 02 score. If DISA, NABSC, or HASC assigns the applicant a grade (based solely on conviction history) that surpasses the Owner's selected maximum score, that applicant will be denied hire and will not be able to work at the Owner's facility, regardless of the position for which they have applied or any rehabilitation or mitigating evidence.

49.    Defendant DISA's sample background check consent form states, "The information in the consumer report will be used to generate a background screen grade.. (sic) Each Owner participating will provide the maximum background screen grade that will be allowed for Contractor Employees to be eligible for access to that Owner's site. DISA, Inc (sic). or the NABSC Program Lookup Application will compare the Owner's requirements to the

---

[14]  *See* Exh. 1, NABSC Policy at 12-18 (App. C); Exh. 2, DISA Policy at 9-14 (Exh. C).

background screen grade provided by DISA, Inc (sic) to classify you with either an Active or Inactive status for that Owner's site[.]"[15]

50.     On information and belief, Plaintiff signed a background check consent form that included the above paragraph in DISA's sample background check consent form.

51.     Defendant NABSC and HASC's sample background check consent form similarly states, "The information in the consumer report will be used to generate a background screen grade.. (sic). Each Owner participating in the NABSC will provide the NABSC Program Custodian with the maximum background screen grade that will be allowed for Contractor Employees to be eligible for access to that Owner's site. The NABSC Program Lookup Application will compare the Owner's requirements to the background screen grade provided by [Consortium TPA] to classify you with either an Active or Inactive status for that Owner's site."[16]

B.  DISA, NABSC, and HASC and their background screening search and grading criteria

52.     Defendant DISA is a nationwide company that provides a wide range of services to businesses, including criminal background checks on employees and applicants for employment. DISA's policy and practice affected and continues to affect countless California residents working or intending to work in the refinery and other industries in the state.

53.     Defendant NABSC is a nationwide association of industrial facility owners, contractor employers, and background check companies that developed and implements a nationwide program for its members for hiring and screening individuals applying for employment for access to Owners' facilities. NABSC's policy affects countless California residents working or intending to work in the refinery and other industries in the state.

54.     Defendants DISA, NABSC, and HASC perform background screenings for applicants, such as Plaintiff, on behalf of Defendants JCL, Air Products, and Phillips 66. The background checks and scores produced by DISA, NABSC, and HASC directly affect hiring and firing decisions by Defendants JCL, Air Products, and Phillips 66.

---

[15]  *See* Exh. 2, DISA Policy at 18 (App. B).
[16]  *See* Exh. 1, NABSC Policy at 10 (App. B).

Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

55.    On information and belief, Defendant NABSC and/or HASC authorizes the establishment of reciprocal background screening consortium programs, provided they are developed using Defendant NABSC's background screening consortium process and are approved by its steering committee(s).

56.    DISA participates in the North American Background Screening Consortium and/or operates its own reciprocal consortium.

57.    On information and belief, Defendant DISA established and maintains its own background screening grading consortium, "DISA Contractors Consortium" and/or "DISA Background Screening Consortium," which utilizes a substantially identical background screening search and grading criteria to that of Defendant NABSC.[17]

58.    On information and belief, Contractor Employers are required to select a Consortium TPA to perform background screening for criminal dispositions, including the assignment of a background screen grade, if they wish to provide service to Owners.

59.    On information and belief, Defendant NABSC and/or HASC has approved Defendant DISA to be a Consortium TPA in the NABSC Program.

60.    On information and belief, DISA is also a Consortium TPA in the DISA Program.

61.    On information and belief, Defendants DISA, NABSC, and HASC claim that the background screen grade designation they give, which is then used by Defendants JCL, Air Products, and Phillips 66, is a proprietary product of Defendants DISA, NABSC, and HASC.

62.    Defendants DISA, NABSC, and HASC created, implemented, and administered the background screen grade designation on prospective employees like Plaintiff, on behalf of Defendants JCL, Air Products, and Phillips 66. For example, DISA's program document states that "[t]he requirements of the Program are developed and controlled by the DISA Background Screening Consortium."[18]

_____

[17]  *See* Exh. 1, NABSC Policy at 12-18 (App. C); Exh. 2, DISA Policy at 9-14 (App. C).
[18]  *See* Exh. 2, DISA Policy at 1; *see also* Exh. 1, NABSC Policy at 1 ("the requirements of the North American Background Screening Consortium (herein after referred to as 'the Program') are developed and controlled by volunteer Ownerpersonnel (sic) and Owner User Council representatives on the North American Background Screening Consortium Screening

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

63.    Defendants NABSC and HASC had control over its background screening search and grading criteria and background screen designation, and were responsible for its administration, implementation, and structure.

64.    Defendant DISA had control over its background screening search and grading criteria and background screen designation, and was responsible for its administration, implementation, and structure.

65.    Under the Programs, Contractor Employees are the direct employees of Contractor Employers. Contractor Employers assign eligible Contractor Employees to Owners' facilities for a particular job. During the assignment, the Contractor Employee remains the direct employee of the Contractor Employer but is directed, supervised, and otherwise controlled by the Owner while on its premises.

66.    On information and belief, Contractor Employers, such as Defendant JCL, use portals or databases administered by Defendants DISA, NABSC, and HASC to determine an applicant's employment eligibility and status, and access to various Owner sites. The job application will display whether an applicant is "active" or "inactive" for hire at a given site based on their background screen grade.

67.    On information and belief, Owners, such as Defendants Air Products and Phillips 66, may also access the portals or databases to view the "active" or "inactive" status.

68.    Defendants NABSC and HASC maintain and operate a program called NABSC Program Lookup Application that compares the Owner's requirements to the background screen grade provided by Defendant DISA to classify a potential employee as "active" or "inactive" for that Owner's site. This description is included as part of the standard background consent form used by Defendants DISA and NABSC.[19]

69.    On information and belief, Defendant DISA maintains and operates a program called DISAWorks and/or DISAWorks 2.0 that functions similarly to the NABSC Program Lookup Application. On information and belief, DISAWorks includes information about

---

Committee . . . [HASC] is responsible for implementing the Program in accordance with the Program requirements and maintaining a Program Lookup Application.").

[19] *See* Exh. 1, NABSC Policy at 10 (App. B); Exh. 2, DISA Policy at 8 (App. B).

applicants who have applied for employment and for whom DISA has been engaged to conduct a background check. On information and belief, DISA marks individuals as "active" or "inactive" based on their background screen grade and Owners and Contractor Employers can look up individual applicants' statuses.

70.    Contractor Employers may seek a waiver or exemption from an Owner for a Contractor Employee who did not receive a background screen grade that meets the Owner's security requirements. The criteria for granting a waiver and the decision to grant a waiver are in the sole discretion of the Owner. A waiver or exemption has no impact on the background screen grade developed by defendant DISA, NABSC, or HASC. As part of the exemption or waiver process, an Owner may have access to the Contractor Employee's background screen report. However, on information and belief, under the Programs, there is no provision that permits a Contractor Employee to directly seek a waiver from an Owner.[20]

71.    On information and belief, the waiver process has never been used by Defendants. When Plaintiff inquired about re-scoring with Defendant DISA and about her employment with Defendants JCL and Air Products, the waiver was not presented as an option.

72.    Unless an Owner grants a waiver, a Contractor Employee whose background screen grade exceeds the Owner's maximum grade is denied employment with the Contractor Employer and an assignment to the Owner.

C.    Plaintiff's experience under DISA and NABSC's policies.

73.    In 1993, at 21 years old, Plaintiff was convicted of conspiracy to commit armed bank robbery for tampering with an ATM and was sentenced to serve approximately 26.5 years in prison.

74.    In 2017, after serving 25 years, a district court ruled the statute used to convict Plaintiff unconstitutional, vacated her conviction and sentence, and resentenced her to 60 months (or 5 years). Based on the district court's decision and the fact that she had already served far more than 60 months, Plaintiff was released from prison in 2017.

75.    Had Plaintiff been convicted and sentenced in accordance with the district court's

---

[20]  *See* Exh. 1, NABSC Policy at 6; Exh. 2, DISA Policy at 6.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

November 20, 2017 decision, she would have been released from prison after serving 60 months, in 1998. She served over 19 additional years under the now-unconstitutional statute.

76.     Plaintiff has been successfully employed for approximately five years, including approximately four years of employment with oil refineries such as Chevron, Marathon, and even Defendant Phillips 66, who, at the time, on information and belief, did not use the background screening programs at issue in this case.

77.     In or around 2019, Plaintiff was approved for and currently possesses a valid Transportation Worker Identification Credential ("TWIC card"), after she underwent a rigorous threat assessment background check, conducted by the U.S. Department of Homeland Security, who found that Plaintiff is not a threat to the safety of critical infrastructures such as airports, railroads, chemical plants, and oil refineries.[21]

78.     In addition, Plaintiff has undergone numerous trainings, received various certifications, and has years of experience performing the relevant job duties of the positions in question. For instance, she successfully completed a 30-hour Construction Safety and Health training in 2021 and a 10-hour Construction Safety and Health course in 2022, by OSHA. Plaintiff has also completed the following trainings: Principles of Petroleum Refining, Refinery Safety Overview, and Aegion Energy Services Safety.

79.     Nevertheless, when Defendant DISA screened Plaintiff, they assigned her a background screen grade of "05" based solely on her 1993 conviction.

80.     Upon information and belief, based on Plaintiff's background screen grade, she was shown as "inactive" to multiple Owners and Contractor Employers, and this "inactive" status was displayed on Defendant DISA's DISAWorks database and/or Defendant NABSC and HASC's Program Lookup Application. As a result of being shown as "inactive," Plaintiff lost employment opportunities.

81.     Plaintiff's conviction alone does not establish that she poses unacceptable risks to the safety of oil refineries.

_____

[21] The U.S. Department of Homeland Security first approved Plaintiff's TWIC card in or around 2019 and has since approved a renewal in 2023, which expires on December 31, 2028.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

82.     Under the Programs, Defendants assign the background screen grade of "05" to terrorism. They also assign the same grade to kidnapping, murder, and rape—as well as carjacking, credit card fraud, denial or removal under the Immigration and Nationality Act, purse snatching, immigration violations, and traffic offenses (excluding DWI/DUI convictions). It is not reasonable to believe that *each and every* one of these offenses, standing alone, establishes that the convicted person poses unacceptable risks to the safety of oil refineries.

83.     Based solely on the provisions of the DISA, NABSC, and HASC Programs, the background screen grade of "05" resulted in Plaintiff's denial of employment with Defendant JCL and any other participating Contractor Employers and denial of assignment to Defendant Air Products, Phillips 66, and any other participating Owner.

84.     Defendants DISA, NABSC, and HASC significantly controlled and/or interfered with Plaintiff's access to employment opportunities with the other Defendants and other Contractor Employers, based on the background screen grade of "05" they assigned to Plaintiff.

85.     As a consequence of Defendant's policies and practices, Plaintiff has experienced emotional distress, including, but not limited to suffering, anguish, fright, horror, feelings of worthlessness, grief, anxiety, worry, nervousness, shock, stress, hopelessness, humiliation, disenfranchisement, powerlessness, and shame.

D.   Plaintiff's experience with Defendants JCL and Air Products

86.     In or around November 2019, Plaintiff applied for a job as a Safety Attendant with Defendant JCL in Carson, California.

87.     A Safety Attendant recognizes hazards, evaluates and mitigates risks, and increases overall safety awareness among employees.

88.     On or around December 30, 2019, Defendant JCL conditionally offered Plaintiff a position working at Defendant Air Products' site. Plaintiff was offered a position contingent on a criminal history background check. By conditionally offering Plaintiff a position, Defendant JCL has admitted that Plaintiff is qualified for the position in question. She accepted the offer.

89.     On or about January 7 or 8, 2020, as required by the Programs, Defendant JCL obtained a consumer report (or background check) on Plaintiff from Defendant DISA. The report

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

disclosed Plaintiff's 1993 conviction, noting that she had been re-sentenced to 60 months confinement in 2017.

90.    In a "Pre-Adverse Action (Consortium) Letter" dated January 8, 2020, Defendant DISA informed Plaintiff that her background screen grade may restrict her from being assigned to certain Owners' facilities, who are participating in the North American Background Screening Consortium. This disqualification was based on the employment cut off score selected by such Owners as part of the Programs.

91.    The "Pre-Adverse Action (Consortium) Letter" did not state the disqualifying conviction(s) that was the basis for its pre-adverse decision or any information regarding Plaintiff's right to submit evidence of rehabilitation or mitigating circumstances, or both. It also did not include that Plaintiff had been assigned a score of "05" under the Programs or a copy of her background check. Attached hereto as Exhibit 3 and incorporated herein by reference is a true and correct copy of the January 8, 2020 "Pre-Adverse Action (Consortium) Letter."

92.    Shortly after receiving the Pre-Adverse Action Letter, on or around January 14, 2020, Plaintiff spoke with a JCL representative, who verbally notified her of its preliminary decision to withdraw her offer of employment. Plaintiff explained the circumstances of her conviction, including the district court's 2017 order vacating her conviction and reducing her sentence. The JCL representative responded that because Plaintiff had been released from prison in 2017, she could not work for JCL.

93.    In a final "Adverse Action Letter (Consortium)" dated January 21, 2020, Defendant DISA informed Plaintiff that her eligibility to access any Owner's facility participating in Defendant NABSC consortium may be restricted. Attached hereto as Exhibit 4 and incorporated herein by reference is a true and correct copy of the January 21, 2020 "Adverse Action Letter (Consortium)."

94.    Plaintiff did not receive the final "Adverse Action Letter (Consortium)," dated January 21, 2020, until approximately 12 months later, on or around February 25, 2021, and only after several attempts and communications with DISA representatives insisting she receive all her documents.

16                Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

95.     On information and belief, Defendant DISA also furnished Plaintiff's background screen grade of "05" to other entities participating in the Programs, including Defendants JCL, Air Products, NABSC, and HASC.

96.     On information and belief, Plaintiff is not eligible for employment at any oil refinery participating in Defendants DISA, NABSC, or HASC's Programs or Consortiums.

97.     Plaintiff's conviction has no bearing on her ability or fitness to perform the duties of the position of Safety Attendant or related positions.

E.   Plaintiff's experience with Phillips 66

98.     Defendant Phillips 66 refines, processes, transports, and sells various petrochemical products and owns several refineries that employ individuals through processes and policies created and maintained by Defendants DISA, NABSC, and/or HASC.

99.     Plaintiff previously worked at Defendant Phillips 66's oil refinery site, in or around 2019, through Total Western, as a Pipeline Attendant, without any issue. On information and belief, she was hired before Phillips 66 started using DISA, NABSC, and HASC's background screening policy.

100.    On or about December 2020, Plaintiff applied for and was under consideration for a position at Defendant Phillips 66's oil refinery site in Wilmington, California.

101.    Plaintiff was verbally informed by another DISA and NABSC Contractor Employer that she was ineligible for the position at Phillips 66 due to her background screen grade (given to her by Defendant DISA pursuant to its and NABSC and /or HASC's Programs).

102.    Plaintiff believes that Defendants DISA, NABSC and HASC did not run a new or subsequent background check with this and each employment inquiry, but instead relied on the January 2020 background screen grade it previously created to disqualify her from this position.

103.    Plaintiff's sole conviction has no bearing on her ability or fitness to perform the duties of the position of Safety Attendant.

104.    All communications with Plaintiff regarding her employment application for the job at Defendant Phillips 66 were verbal and done through a DISA / NABSC Contractor Employer.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

105.    As a consequence of Defendants' policies and practices, Plaintiff has experienced emotional distress, including, but not limited to suffering, anguish, fright, horror, feelings of worthlessness, grief, anxiety, worry, nervousness, shock, stress, hopelessness, humiliation, disenfranchisement, powerlessness, and shame.

F.    Plaintiff's post-denial efforts

106.    In February 2021, Plaintiff disputed the information on her background check with Defendant DISA. She submitted a web inquiry on or about February 25, 2021. She received a phone call from Bebe Salazar, a DISA representative, on or around March 11, 2021, and Ms. Salazar confirmed that her background screen grade remained at grade "05."

107.    On or around May 17, 2021, Plaintiff, through counsel, submitted mitigating and rehabilitative information to Defendant JCL, in an attempt to have her background screen grade re-evaluated and the job offer revocation rescinded, so that Plaintiff could begin working. This information included Plaintiff's explanation that her conviction was from over 29 years ago and that she had successfully passed a security threat assessment from the Transportation Security Administration and possessed a Transportation Worker Identification Credential.

108.    On July 12, 2021, Plaintiff, through counsel, submitted mitigating and rehabilitative information, including information about her Transportation Worker Identification Credential card, to Defendant DISA and advised DISA of the discriminatory impact of its grading system on African Americans.

109.    Plaintiff again communicated with Defendant DISA on or around February 4, 2022. In a letter, she, through counsel, provided additional information expressly to aid Defendant DISA in deciding whether to re-evaluate her background screen grade. She submitted information about the circumstances of her conviction and rehabilitation, as well as exhibits with evidence of her rehabilitation, including four letters of recommendation, one of which was from a former supervisor and foreman in the oil refinery industry.

110.    Plaintiff has repeatedly been informed that she is disqualified from employment with Owners who participate in Defendants DISA, NABSC, and/or HASC's Programs. She has not been able to obtain employment in the refinery industry and is discouraged from applying for

jobs because DISA, NABSC, and HASC's background screen grade designation has thus far barred her from obtaining employment.

G.  Statistical disparities in California's criminal legal system

111.  Racial disparities pervade the U.S. and California criminal legal systems such that African American individuals are disproportionately arrested and disproportionately convicted, when compared to white counterparts and their share of the population.[22]

112.  According to the 2021 Judicial Council of California's Report to the Legislature on the Disposition of Criminal Cases According to the Race and Ethnicity of the Defendant, African American individuals make up 18.9 percent of felony defendants, but only 5.5 percent of the total California adult population.

113.  African Americans have higher arrest rates than whites in nearly all of California's 58 counties, according to a 2019 Public Policy Institute of California study.

114.  In California, as of April 2020, the felony arrest rate of African Americans was 3,229 per 100,000 in the population, 3.5 times the overall rate, as reported by the 2023 California Reparations Report. The same report found that African American women are imprisoned at a rate five times higher than that of white women.

115.  As a result of these statistical disparities, restrictions on hiring or placing individuals with conviction histories have a disproportionately severe effect on African Americans. In other words, policies such as Defendants' effectively import the discrimination present in the criminal legal system into the employment sector. This discriminatory denial of employment affects not only the individuals who are rejected but also their families and entire communities.

---

[22]  *See*, *e.g.*, The Sentencing Project, U.S. Criminal Justice Data: Racial Disparities in California, *available at* https://www.sentencingproject.org/research/us-criminal-justice-data/?state=california (last accessed: July 24, 2024); Scott Graves, California Budget & Policy Center, California's State Prisons (June 2021), pp. 15-19, *available at* https://calbudgetcenter.org/app/uploads/2021/06/R-FP-Prison-Racial-Disparities.pdf (last accessed: July 24, 2024).

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

116.    This is especially true when employers, like Defendants, fail to conduct individualized assessments, evaluating the time that has passed since the conviction, the nature of the conviction and the nature of the job, as well as mitigating and rehabilitative evidence. Employers' reliance solely on the presence of a conviction and its classification as a felony or misdemeanor further exacerbates the discriminatory impact.

117.    In contrast, considering evidence of rehabilitation and other factors in mitigation can significantly ameliorate the discriminatory impact. For example, from late 2007 to April 2010, the Transportation Security Administration ("TSA") screened the FBI records of about 1.6 million workers. The TSA instituted a process where employees could ask for a waiver of a disqualifying felony offense. During that time, at least 60 percent of the employee petitions to "waive" their disqualifying felony offenses were granted by TSA based on evidence of rehabilitation. Over half of the petitions to waive a disqualifying record were filed by African Americans, which is nearly four times their share of the worker population.[23]

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

118.    For all causes of action subject to exhaustion requirements, prior to the initiation of this lawsuit, Plaintiff filed complaints against Defendants with the California Civil Rights Department pursuant to Sections 12940, 12952, and 12965 of the California Government Code.

119.    On August 15, 2023, September 8, 2023, and August 5, 2024, the Civil Rights Department issued "right to sue" letters against Defendants.

### FIRST CAUSE OF ACTION
### Violation of the California Fair Chance Act,
### California Government Code § 12952
### Against All Defendants

120.    Plaintiff realleges and incorporates each of the foregoing paragraphs as though fully set forth herein.

---

[23]  *See* Department of Homeland Security, TWIC Dashboard (May 20, 2010); National Employment Law Project, A Scorecard on the Post-9/11 Port Worker Background Checks (July 2009).

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

121.    Defendants DISA, JCL, Air Products, Phillips 66, NABSC, and HASC were each a covered employer of Plaintiff.

122.    In the alternative, Defendants DISA, NABSC, and HASC were each an agent of Defendants JCL, Air Products, and Phillips 66. Upon information and belief, each Defendant conducted or facilitated the administrative functions associated with the hiring and firing of prospective employees, such as background checks, which are the FEHA and Fair Chance Act-regulated activities.

123.    In the alternative, Defendants Phillips 66, Air Products, DISA, NABSC, and HASC were each a third-party interferer.

**Gov. C., § 12952(c)(1)**

124.    The Fair Chance Act requires that "an employer that intends to deny an applicant a position of employment solely or in part because of the applicant's conviction history shall make an individualized assessment of whether the applicant's conviction history has a direct and adverse relationship with the specific duties of the job that justify denying the applicant the position."[24]

125.    The Fair Chance Act also specifies several factors that an employer must consider when making the individualized assessment, including the nature and gravity of the offense, the time that has passed since that conduct and completion of the sentence, and the nature of the job held or sought.

126.    Defendants' Programs, including the background screening policy and assignment of a background screen grade based solely on conviction, effectively bars any job applicants with felonies from obtaining employment for any position with any participating Owner through a Contractor Employer, in part because Defendants never consider all of the factors for individualized assessments required under the law. For example, time passed is not considered, nor are mitigating circumstances or rehabilitation evidence.

127.    The NABSC and /or HASC Program, attached hereto as Exhibit 1, forecloses an individualized assessment in its assignment of a background screen grade, which is derived solely

---

[24]  Gov. Code § 12952(c)(1).

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

from consideration of an applicant's conviction history.  The NABSC and/or HASC Program permits a Contractor Employer and Owner to deny employment and assignment due to a conviction without undertaking the individualized assessment required by the Fair Chance Act. The Program, therefore, on its face and as applied to Plaintiff, violates the Fair Chance Act.

128.  Likewise, the DISA Program, attached hereto as Exhibit 2, forecloses an individualized assessment in its Background Screening Policy and assignment of a background screen grade, which is derived solely from consideration of an applicant's conviction history. The DISA Program permits a Contractor Employer and Owner to deny employment and assignment due to a conviction without undertaking the individualized assessment required by the Fair Chance Act. The Program, therefore, on its face and as applied to Plaintiff, violates the Fair Chance Act.

129.  In connection with Plaintiff's application for the positions of Safety Attendant and related positions, Defendants DISA, NABSC, and HASC assigned her a background screen grade of "05" based solely on Plaintiff's conviction from over 30 years ago, without considering its age or its relationship to the nature of the positions; determined that the grade surpassed the predetermined risk level set by Defendants Air Products and Phillips 66; and shared the result of the determination as an "inactive" status with Defendants JCL, Air Products, Phillips 66 and others.

130.  Defendant JCL relied solely on Plaintiff's background screen grade, which was determined based solely on her conviction history, and/or her "inactive" status previously determined by DISA, NABSC, and/or HASC, to revoke her job offer and did not undertake the individualized assessment required by the Fair Chance Act, including  failing to consider the age of her conviction, the nature of the job position, and other mitigating or rehabilitative circumstances.

131.  Defendant Air Products relied solely on her "inactive" status, which resulted from her "05" grade based solely on her conviction history, to deny her employment, without undertaking the individualized assessment required by the Fair Chance Act, including by failing to consider the age of her conviction, the nature of the job position, and other mitigating or

1    rehabilitative circumstances.

2    132.    Defendant Phillips 66 relied solely on her "inactive" status, which resulted from

3    her "05" grade based solely on her conviction history, to deny her employment, without

4    undertaking the individualized assessment required by the Fair Chance Act, including failing to

5    consider the age of her conviction, the nature of the job position, and other mitigating or

6    rehabilitative circumstances.

7    133.    Defendants DISA, NABSC, and HASC did not conduct an individualized

8    assessment in assigning Plaintiff a "05" grade based solely on her conviction history and deemed

9    her ineligible for employment based on that grade.

10    134.    Based on information available at the time to Defendants DISA, JCL, Air

11    Products, Phillips 66, NABSC and, HASC Plaintiff's decades-old conviction is not directly and

12    adversely related to the specific duties of Safety Attendant and other positions.

13    **Gov. C., § 12952(c)(2)**

14    135.    Subsections (A) and (C) of paragraph (2) of Government Code section 12952(c)

15    require that when an employer makes "a preliminary decision that the applicant's conviction

16    history disqualifies the applicant from employment," it must provide to the applicant a written

17    "[n]otice of the disqualifying conviction or convictions that are the basis for the preliminary

18    decision to rescind the offer" and an explanation of the applicant's right to respond to the pre-

19    adverse decision, "inform[ing] the applicant that the response may include . . . evidence of

20    rehabilitation or mitigating circumstances."

21    136.    None of the Defendants provided a Fair Chance Act-compliant notice of their

22    preliminary decision to withdraw Plaintiff's offer of employment.

23    137.    The January 8, 2020 "Pre-Adverse Action (Consortium) Letter," attached hereto

24    and incorporated by reference as Exhibit 3, did not include any information regarding her right to

25    submit rehabilitation and mitigation evidence and did not identify the disqualifying conviction.

26    138.    Plaintiff did not receive a copy of her background check with the January 8, 2020

27    "Pre-Adverse Action (Consortium) Letter."

28

Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

139.   Plaintiff later received a copy of her background check, in or around February 2021, only after several communications and her insistence that she be provided with all relevant documents.

140.   In connection with her later employment application for the position of Safety Attendant in or around 2020, Plaintiff received no written pre-adverse action notice whatsoever.

141.   As a result, Defendants DISA, JCL, Air Products, Phillips 66, NABSC and, HASC denied Plaintiff a meaningful opportunity to provide evidence of rehabilitation and mitigating circumstances, in violation of Government Code section 12952(c)(2).

### <u>Gov. C., § 12952(c)(4)</u>

142.   Paragraph (4) of subdivision (c) of section 12952 of the Government Code requires that Defendants conduct a second individualized assessment of Plaintiff, in light of any rehabilitation or mitigation evidence that Plaintiff provides in response to Defendants' pre-adverse action notice.

143.   The NABSC and/or HASC Program, attached hereto as Exhibit 1, forecloses the consideration of rehabilitation or mitigation evidence in its assignment of a background screen grade, either initially or upon receipt of additional information from applicants.

144.   Likewise, the DISA Program, attached hereto as Exhibit 2, forecloses the consideration of rehabilitation or mitigation evidence in its assignment of a background screen grade.

145.   In connection with Plaintiff's application for the positions of Safety Attendant and other positions, Defendants DISA, JCL, Air Products, Phillips 66, NABSC and, HASC did not consider any rehabilitation or mitigation evidence received from Plaintiff after generating the initial background screen grade, including her possession of a TWIC card, her approximately four years of successful employment at oil refineries, and the re-sentencing and concomitant excessive prison term beyond what she was legally sentenced to.

146.   By depriving Plaintiff of any opportunity to provide supplemental information under their policy and Program, Defendants circumvented the statutory requirement to conduct a second individualized assessment of Plaintiff, in violation of the law.

147.   As a direct and proximate result of Defendants' actions described above, Plaintiff has sustained economic and non-economic harms to be proven at trial, in addition to her reasonable attorneys' fees, costs, and litigation expenses.

### Gov. C., § 12952(c)(5)

148.   Paragraph (5) of subdivision (c) of section 12952 of the Government Code requires that an employer that makes a final decision to deny employment because of an applicant's conviction history must notify the applicant in writing of the final denial, including any existing procedure to challenge the denial or request reconsideration and the right to file a complaint with the Civil Rights Department.

149.   Plaintiff initially did not receive a notification in writing of the final denial.

150.   In or around February 2021, approximately one year after the pre-adverse action notice, Plaintiff received an "Adverse Action Letter (Consortium)," attached hereto and incorporated by reference as Exhibit 4, and dated January 21, 2020.

151.   The "Adverse Action Letter (Consortium)" was not compliant with the Fair Chance Act.

152.   Despite the NABSC and/or HASC Program having a limited procedure in place to challenge or otherwise appeal the background screen grade and background check results,[25] the letter Plaintiff received did not include any notice of the existing procedure or of her right to file a complaint with the Civil Rights Department, as required by law. The NABSC Program's sample pre-adverse and adverse action letters, *see id.*, likewise do not include information about the internal appeal procedure or the right to file a complaint with the Civil Rights Department.

153.   Despite the DISA Program having a limited procedure in place to challenge or otherwise appeal the background screen grade and background check results,[26] the letter Plaintiff received did not include any notice of the existing procedure or of her right to file a complaint with the Civil Rights Department, as required by law.

---

[25] *See* Exh. 1, NABSC Policy at 6.
[26] *See* Exh. 2, DISA Policy at 6.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

154.    Furthermore, Plaintiff attempted to obtain an internal appeal from Defendant DISA to the results of her background check and background screen grade assignment, and DISA refused to re-assess her.

155.    In connection with Plaintiff's applications for the positions of Safety Attendant and other positions, Defendants DISA, JCL, Air Products, Phillips 66, NABSC and, HASC never provided her with a written notice of the final adverse decision specifying the existing procedure to challenge the denial or request reconsideration and the right to file a complaint with the Civil Rights Department.

156.    As a direct and proximate result of Defendants' actions described above, Plaintiff has sustained economic and non-economic harms to be proven at trial, in addition to her reasonable attorneys' fees, costs, and litigation expenses.

**SECOND CAUSE OF ACTION**
**Violation of the California Fair Chance Act,**
**California Government Code § 12952**
**Against Defendants DISA, Phillips 66, NABSC and, HASC**

157.    Plaintiff realleges and incorporates each of the foregoing paragraphs as though fully set forth herein.

158.    Defendants DISA, Phillips 66, NABSC and, HASC are "employers" under the Fair Chance Act (which is a part of the FEHA). Upon information and belief, each Defendant conducted or facilitated the administrative functions associated with the hiring and firing of prospective employees, which are activities regulated by the FEHA and the Fair Chance Act.

**Gov. C., § 12952(a)(2)**

159.    Paragraph (2) of subsection (a) of section 12952 of the Government Code makes it unlawful for Defendants to "inquire into or consider the conviction history of the applicant, including any inquiry about conviction history on any employment application, until after the employer has made a conditional offer of employment to the applicant."

160.    In connection with Plaintiff's application for the position of Safety Attendant, Defendants DISA, Phillips 66, NABSC, and HASC categorically rejected her solely on the basis of her background screen grade of "05" and "inactive" status, pursuant to the DISA and NABSC

Programs[27] prior to making her a conditional offer of employment.

161. Inquiring into or considering Plaintiff's background screen grade or her "inactive" status constitutes an inquiry into or consideration of her conviction history, because the background screen grade and "inactive" status are each a form of her conviction history and derived solely from conviction history under the DISA and NABSC Programs.

162. As a direct and proximate result of Defendants DISA, Phillips 66's, NABSC, and HASC and actions, Plaintiff has sustained economic and non-economic harms to be proven at trial, in addition to her reasonable attorneys' fees, costs, and litigation expenses.

### THIRD CAUSE OF ACTION
### Race Discrimination (adverse impact)
### in Violation of the California Fair Employment and Housing Act,
### as amended, California Government Code § 12940, *et seq.*
### Against All Defendants

163. Plaintiff realleges and incorporates each of the foregoing paragraphs as though fully set forth herein.

164. Under the FEHA, it is unlawful for an employer, on the basis of race, "to refuse to hire or employ [a] person . . . or to discriminate against [a] person . . . in terms, conditions or privileges of employment."

165. Furthermore, "any policy or practice of an employer or other covered entity that has an adverse impact on employment opportunities of individuals on a basis enumerated in the Act is unlawful unless the policy or practice is job-related and consistent with business necessity."

166. Each Defendant is an "employer" under the FEHA.

167. Defendants DISA, NABSC, and HASC were also Plaintiff's employers and/or third-party interferers because they had peculiar control over Plaintiff's access to the job market and had considerable control over her ability to form an employment relationship with her direct employers. Defendants DISA, NABSC, and HASC also established and implemented the Program which governed the criminal background screening that disqualified Plaintiff from employment and assignment with Defendants JCL, Air Products, and Phillips 66, due to her prior conviction.

---

[27] *See generally* Exh. 1, NABSC Policy; Exh. 2, DISA Policy.

27                    Case No:.

168. In the alternative, Defendants DISA, NABSC, and HASC acted as agents, directly or indirectly, of Defendants JCL, Air Products, and/or Phillips 66 and undertook activities regulated by the FEHA on behalf of Defendants JCL, Air Products, and/or Phillips 66. The administrative functions associated with the hiring and firing of prospective employees, such as background checks, the activities regulated by the FEHA.

169. Defendant DISA, on behalf of Defendants JCL, Air Products, and/or Phillips 66, performed the background search; assigned Plaintiff a disqualifying background screen grade of "05"; and failed to request a waiver for Plaintiff from Defendant Air Products and/or Phillips 66.

170. On information and belief, Defendants Phillips 66 and Air Products set a maximum background screen grade for a Contractor Employee to be eligible for assignment to their facilities. Defendants Phillips 66 and Air Products had complete discretion to grant Plaintiff a waiver for assignment to and employment with its facilities.

171. Defendants' policy or practice of denying employment opportunities based on applicants' criminal histories has a disparate impact on African Americans and discriminated against Plaintiff, as an African American individual.

172. Specifically, Defendants' use of background screening grading criteria to set and use a background screen grade has a disparate impact on African Americans and discriminated against Plaintiff as an African American individual.

173. Defendant JCL, pursuant to the DISA and NABSC Programs, denied Plaintiff employment and assignment to Air Products solely because of her prior conviction, as identified and graded "05" by DISA.

174. Defendants did not conduct an individualized assessment of Plaintiff in denying her employment solely based on her conviction.

175. Defendants did not consider mitigating or rehabilitative evidence or the nature of the job for which Plaintiff applied.

176. Furthermore, Plaintiff has already been subjected to a background check process by the U.S. Department of Homeland Security in obtaining her TWIC card and renewals.

Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

177.   According to the 2020 U.S. Census, African Americans make up 5.7% of the California's total population.

178.   According to the arrest disposition data reported by law enforcement agencies and compiled by the California Department of Justice between 1980 and 2023, African Americans make up between 15% (sex offense) and 23% (violent and property offense) of those arrested and charged in California. As such, Defendants' background screening criteria that relies only on the offense type without taking into account any mitigating or rehabilitative evidence and without considering the nature of the job, necessarily result in a disparate impact on African Americans and on Plaintiff.

179.   State or national-level statistics on conviction records that show a substantial disparity based on any characteristic protected by the FEHA are presumptively sufficient to establish an adverse impact.

180.   Defendants' disqualification of applicants based solely on a prior conviction is neither job-related nor consistent with business necessity.

181.   Less discriminatory alternatives, such as the existing requirement for a TWIC card, exist to achieve any alleged business necessity.

182.   As a proximate result of these unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional injury.

183.   Plaintiff is entitled to compensatory damages, emotional distress damages, injunctive and declaratory relief, and her reasonable attorneys' fees and costs of suit.

### FOURTH CAUSE OF ACTION
### Aiding and Abetting Noncompliance
### in Violation of the California Fair Employment and Housing Act,
### as amended, California Government Code § 12940, *et seq.*
### Against Defendants DISA, Air Products, and Phillips 66, NABSC, and HASC

184.   Plaintiff realleges and incorporates each of the foregoing paragraphs as though fully set forth herein.

185.   Subsection (i) of Government Code section 12940 makes it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part,

or to attempt to do so."

186.    Paragraph (d) of Government Code section 12925 defines "person" as "one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries."

187.    All Defendants meet the definition of "person" for the purposes of this action.

188.    Upon information and belief, Defendants all adopted a background screening policy (the "Programs") that prevents participating Contractor Employers and Owners from complying with the requirements of Government Code sections 12940 and 12952, chapters within the FEHA.

189.    Defendants DISA, NABSC, and HASC also require that all Contractor Employers and Owners use an approved Consortium TPA to conduct a background check using their background screening search and grading criteria as a condition of joining their respective consortium. The Consortium TPAs must be approved by the Program Custodian, Defendant HASC, and the Consortium Steering Committee.

190.    On information and belief, Defendants Air Products and Phillips 66 designated a maximum background screen grade for the Consortium TPA to apply to determine which Contractor Employees are eligible to access their sites. The background screen grade is based solely on conviction history and thereby prevents Consortium TPAs from conducting any individualized assessment of an applicant.

191.    By requiring Contractor Employers and Owners to use a background screening policy that violates Government Code section 12952 and has a racially disparate impact on African American applicants, in violation of Government Code section 12940, Defendants DISA NABSC, and HASC aided, abetted, incited, compelled, and coerced the Contractor Employers and Owners into violating the Fair Chance Act and the FEHA.

192.    By setting a background screen grade for Consortium TPAs to apply to Contractor Employees, Defendants Air Products and Phillips 66 aided, abetted, incited, compelled, and coerced Consortium TPAs into violating the Fair Chance Act and the FEHA.

Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

193.   As a direct and proximate result of Defendants' violation, Plaintiff suffered substantial losses in earnings and employment benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, in an amount to be proven at trial.

194.   Defendants' aiding and abetting of repeated and numerous violations of the FEHA (including the Fair Chance Act) entitles Plaintiff to actual damages, including but not limited to past and future lost earnings, out of pocket expenses, damages for emotional distress, punitive damages, and attorneys' fees and costs, to be determined at trial.

### FIFTH CAUSE OF ACTION
### Violation of the California Investigative Consumer Reporting Agencies Act, Cal Civ. Code § 1786.12
### Against Defendants DISA, NABSC, and HASC

195.   Plaintiff realleges and incorporates each of the foregoing paragraphs as though fully set forth herein.

196.   Section 1786.12 prohibits investigative consumer reporting agencies from furnishing an investigative consumer report except in specified circumstances and mandates that investigative consumer reporting agencies obtain certifications from the person procuring or causing the report to be made, as required under Civil Code section 1786.16(a)(4).

197.   Defendant DISA is an investigative consumer reporting agency pursuant to Civil Code section 1786.2(d).

198.   Defendant NABSC is an investigative consumer reporting agency pursuant to Civil Code section 1786.2(d).

199.   Defendant HASC is an investigative consumer reporting agency pursuant to Civil Code section 1786.2(d).

200.   Plaintiff's background screen grade and background screen status are each a consumer report and information on Plaintiff's character, general reputation, and personal characteristics. As such, they are each Plaintiff's investigative consumer report pursuant to Civil Code section 1786.2(c).

201.   On December 31, 2019, in a form titled "DISA Background Screening Consent

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

Form NABSC and Reciprocal Consortiums," Defendant DISA purported to obtain Plaintiff's authorization to "make available [Plaintiff's] subsequent background screen grade to the NABSC Program Lookup Application or any other Owner participating in a DISA Background Screening Consortium for the purpose of determining [Plaintiff's] eligibility for access to Owner's facilities."

202.   On information and belief, Defendant DISA entered Plaintiff's background screen grade into the DISAWorks (maintained by Defendant DISA) and NABSC and/or HASC's Program Lookup Application (maintained by Defendant NABSC and/or HASC) databases.

203.   On information and belief, Defendants DISA, NABSC, and HASC furnished Plaintiff's background screen grade to entities other than Defendant JCL in the past two years through DISAWorks and NABSC Program Lookup Applications, respectively.

204.   On information and belief, Defendants DISA, NABSC, and HASC also furnished Plaintiff's background screen status of "inactive" to entities other than Defendant JCL in the past two years through DISAWorks and NABSC Program Lookup Applications, respectively.

205.   On information and belief, Defendants DISA, NABSC, and HASC also did not obtain the certification required under Civil Code section 1786.16(a)(4) from any entities other than Defendant JCL before furnishing Plaintiff's background screen grade and background screen status to them in the past two years in violation of Civil Code section 1786.12(e).

206.   The purpose of determining one's eligibility for access to facilities is not a permissible purpose under section 1786.12 of the Civil Code.

207.   Defendants DISA, NABSC, and HASC did not have any permissible purpose to share Plaintiff's background screen grade or background screen status to any entity other than Defendant JCL in the past two years.

208.   Defendants DISA, NABSC, and HASC's unlawful furnishing of Plaintiff's background screen grade and background screen status caused her to lose valuable employment opportunities, and she suffered damages as a result.

209.   Defendant DISA's violation of Section 1786.12 of the Civil Code was grossly negligent and entitles Plaintiff to seek punitive damages under Section 1786.50 of the Civil Code.

### SIXTH CAUSE OF ACTION
### Violation of the California Investigative Consumer Reporting Agencies Act,
### Cal Civ. Code § 1786.18(a)(7)
### Against Defendant DISA

210.    Plaintiff realleges and incorporates each of the foregoing paragraphs as though fully set forth herein.

211.    Section 1786.18(a)(7) of the Civil Code prohibits investigative consumer reporting agencies from furnishing an investigative consumer report containing records of conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years.

212.    Pursuant to Section 1786.2(d) of the Civil Code, Defendant DISA is an investigative consumer reporting agency.

213.    In 2020, Defendant DISA included Plaintiff's 1993 conviction in an investigative consumer report on her, noting in part that she was re-sentenced to 60 months confinement in 2017.

214.    Defendant DISA violated Section 1786.18(a)(7) of the Civil Code by reporting Plaintiff's conviction when the disposition date antedated the report by nearly 27 years and the release date by nearly 22 years. Therefore, DISA was legally required to find that Plaintiff should be deemed released from prison in 1998 and that her release date antedates the report by more than seven years.

215.    Any reasonable person would have realized that Plaintiff's retroactive release date is 1997, nearly 23 years before the date Defendant DISA reported her conviction.

216.    Under Section 1786.50 of the Civil Code, Defendant DISA is liable to Plaintiff for actual damages or $10,000, whichever is greater, in addition to costs and attorneys' fees.

217.    DISA's reporting of Plaintiff's obsolete record of conviction caused her to lose valuable employment opportunities, and she suffered damages as a result.

218.    On information and belief, Defendant DISA has no procedure or policy in place to do the simple calculation on retroactive release dates following a resentencing order, in reckless disregard of any potential harm that reporting of obsolete conviction information would have on

1    individuals such as Plaintiff.

2    219.    Defendant DISA's violation of Section 1786.18 of the Civil Code was grossly

3    negligent and entitles Plaintiff to seek punitive damages under Section 1786.50(b) of the Civil

4    Code.

5    **PRAYER FOR RELIEF**

6    WHEREFORE, Plaintiff prays for relief as follows:

7    220.    With regard to the first, second, third, and fourth causes of action:

8    a.    For an order against all Defendants, finding and declaring that the consortium

9    background screening policy of assigning a background screen grade based

10    only on an individual's criminal history, without considering the nature and

11    age of the conviction or the nature of the job violates Sections 12940 and 12952

12    of the Government Code;

13    b.    For an order preliminarily and permanently enjoining Defendants JCL, Air

14    Products, and Phillips 66 from accessing or using a background screen grade

15    assigned by DISA and/or obtained from NABSC, and/or HASC until and

16    unless assignment of the said grade takes into account the nature and gravity

17    of the offense or conduct, the time that has passed since the offense or conduct,

18    the nature of the job held or sought, and other mitigating and rehabilitative

19    factors;

20    c.    For an order preliminarily and permanently enjoining Defendants DISA,

21    NABSC, and/or HASC from assigning a background screen grade based only

22    on an individual's criminal history, without considering the nature and age of

23    the conviction and the nature of the job, and specifically enjoining Defendants

24    from continuing to use the score of "05" for Plaintiff;

25    d.    For compensatory and/or nominal damages according to proof, including past

26    and future lost compensation and benefits;

27    221.    With regard to the fifth cause of action:

28

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

a. For an order preliminarily and permanently enjoining Defendant DISA, NABSC, and/or HASC from furnishing Plaintiff's background screen grade and background screen status to any entity other than the Contractor Employer who has specifically obtained her authorization with a permissible purpose with regard to the employment;

b. For statutory, compensatory, and/or punitive damages according to proof, including past and future lost compensation and benefits;

222. With regard to the sixth cause of action:

a. For statutory, compensatory, and/or punitive damages according to proof, including past and future lost compensation and benefits;

223. With regard to all causes of action:

a. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

b. For injunctive relief directing Defendants to discontinue their unlawful policy and practice of relying on the background screen grade to disqualify applicants from site access and/or employment;

c. For injunctive relief directing Defendants to discontinue their unlawful policy and practice of relying solely on a prior conviction to disqualify applicants from site access and/or employment;

d. For injunctive relief directing Defendants to discontinue their unlawful policy and practice of utilizing the background screening search and grading criteria;

e. For compensatory damages, including lost wages and benefits (both back pay and front pay), emotional distress damages, and punitive damages, in an amount to be proven at trial;

f. For interest on damages, including pre- and post-judgment interest and an upward adjustment for inflation;

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR
EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

g. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

h. For an award of attorneys' fees and costs; and

i. Such other relief as the Court may deem just and proper.

DATE: August 8, 2024                    Respectfully submitted,


**ROOT & REBOUND REENTRY ADVOCATES**


BY:   _/s/_ AMANADA CARLIN
     Amanda Carlin
     Joshua E. Kim
     Sarah True
     *Attorneys for Plaintiff*
     JANE ROE


**LEGAL AID AT WORK**


BY:   _/s/_ SABINA CROCETTE
     Molly Lao
     Sabina Crocette
     Stacy Villalobos
     *Attorneys for Plaintiff*
     JANE ROE

Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

1

2                      **DEMAND FOR JURY TRIAL**

3        Plaintiff hereby demands a jury trial in the above-entitled action.

4

5 DATED: August 8, 2024                 Respectfully submitted,

6

7                              **ROOT & REBOUND REENTRY ADVOCATES**

8

9

10                     BY:  */s/* AMANDA CARLIN

11                           Amanda Carlin

                          Joshua E. Kim

12                           Sarah True

                          ***Attorneys for Plaintiff***

13                           JANE ROE

14

15                              **LEGAL AID AT WORK**

16

17                     BY:  */s/* SABINA CROCETTE

18                           Molly Lao

                          Sabina Crocette

19                           Stacy Villalobos

                          ***Attorneys for Plaintiff***

20                           JANE ROE

21

22

23

24

25

26

27

28

        Case No:.

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

**VERIFICATION**

**Verification of Pleading (Code Civ. Proc., § 446) Declaration under Penalty of Perjury**

**Form (Code Civ. Proc., §§ 446, 2015.5)**

I, Jane Roe, declare:

I am the Plaintiff in the above-entitled matter.

I have read the foregoing VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION in the matter of *Jane Roe v. DISA Global, Inc. et al* and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on the information and belief, and, as to those matters, I believe it to be true.

Executed on: August 7, 2024, at San Bernardino County, California.

I declare (or certify) under penalty of perjury that the foregoing is true and correct.

*Jane Roe*
_____
Jane Roe

VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

1   ROOT & REBOUND REENTRY ADVOCATES
    Amanda Carlin (SBN 348230)
2   Joshua E. Kim (SBN 257260)
    Sarah True (SBN 345847)
3   1730 Franklin Street, Suite 300
    Oakland, CA 94612
4   Tel: (510) 279-4662
    Email: acarlin@rootandrebound.org
5          jkim@rootandrebound.org
           strue@rootandrebound.org
6
    LEGAL AID AT WORK
7   Molly Lao (SBN 339621)
    Sabina Crocette (SBN 197134)
8   Stacy Villalobos (SBN 306710)
    180 Montgomery Street, Ste. #600
9   San Francisco, CA 94104
    Tel: (415) 864-8848
10  Email: mlao@legalaidatwork.org
           scrocette@legalaidatwork.org
11         svillalobos@legalaidatwork.org

12  ***Attorneys for Plaintiff***
    JANE ROE

13              **SUPERIOR COURT OF CALIFORNIA**
14                **COUNTY OF LOS ANGELES**
                  **UNLIMITED JURISDICTION**
15

16  JANE ROE,                          |  Case No.

17                                      **EXHIBTS 1-4 FOR VERIFIED**
                                        **COMPLAINT FOR DAMAGES AND**
18              Plaintiff,              **DECLARATORY AND INJUNCTIVE**
                                        **RELIEF FOR EMPLOYMENT**
19              v.                      **DISCRIMINATION**

20                                      **DEMAND FOR JURY TRIAL**

21  DISA GLOBAL SOLUTIONS, INC;
    JCL SAFETY SERVICES; AIR PRODUCTS
22  AND CHEMICALS, INC; PHILLIPS 66;
    NORTH AMERICAN BACKGROUND
23  SCREENING CONSORTIUM; HEALTH
    AND SAFETY COUNCIL; and DOES 1-10,
24  inclusive,

25

26              Defendants.

27

28

                                        Case No.
    EXHIBITS 1-4 FOR VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY AND
    INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION – DEMAND FOR JURY TRIAL

# Exhibit 1

NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM

## TABLE OF CONTENTS

1.  **OBJECTIVE**

2.  **KEY BENEFITS**

3.  **PROGRAM CONTENT AND OWNERSHIP**

4.  **OVERVIEW OF THE BACKGROUND SCREENING CONSORTIUM PROCESS**

5.  **PROGRAM APPLICATION**

6.  **CONSENT FOR BACKGROUND CHECKS AND RELEASE OF INFORMATION**

7.  **BACKGROUND SCREEN REPORTS AND GRADES**

8.  **ELIGIBILITY FOR ACCESS TO OWNER FACILITIES**

9.  **WAIVERS AND EXEMPTIONS**

10.  **CONFIDENTIALITY**

11.  **TRAINING**

12.  **PROGRAM AUDIT**


**APPENDIX A: DEFINITIONS OF KEY TERMS**

**APPENDIX B: SAMPLE BACKGROUND SCREEN CONSENT FORM**

**APPENDIX C: BACKGROUND SCREENING SEARCH AND GRADING CRITERIA**

**APPENDIX D: SAMPLE PRE-ADVERSE AND ADVERSE ACTION LETTERS**

**APPENDIX E: OVERVIEW OF BACKGROUND SCREENING CONSORTIUM PROCESS**

# NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM

## 1  OBJECTIVE

The participating industrial facility Owners recognize the benefits of Contractor Employee background screening in identifying individuals who may pose a risk to Owner financial assets and the people working at Owner facilities through behavior that may cause serious safety incidents, workplace violence, domestic terrorist acts, and theft of materials, equipment or technology.

The target population for the Program includes Contractor Employees providing maintenance, construction and operational support services at petrochemical facilities such as chemical plants and refineries, energy production and utility facilities, and other industrial manufacturers. However, Owners shall define the target workforce at their facilities. This program does not address foreign workers.

A fair and objective standardized Contractor background screening process that includes identity verification, criminal background review and terrorist watch list screen will promote a safe and secure working environment for both Owner and Contractor personnel, and minimize incidents that may affect the surrounding community.

## 2  KEY BENEFITS

The Program will yield the following benefits:

- Establishes standardized background screen criteria; Contractor Employers do not have to comply with multiple Owner requirements
- Includes multiple professional background screening Consortium Third Party Administrators (Consortium TPAs) to perform the background checks, giving Contractor Employers a choice, providing competition and controlling costs
- Allows participating Owners flexibility to determine which contract companies will be included in the Program
- Graded security levels allows participating Owners flexibility to establish their own site access requirements
- Provides Owners and Contractor Employers with ready access to a Contractor Employee's background screen security status (**Active** or **Inactive**), for each participating Owner via the NABSC Program Lookup Application
- A Contractor Employee's background screen grade will be portable if they change employers or begin working at another Owner facility, reducing repetitious background screening and related costs
- Program can be easily audited to ensure compliance
- A decreased number of safety and security related incidents

## 3  PROGRAM CONTENT AND OWNERSHIP

The requirements of the North American Background Screening Consortium (herein after referred to as "the Program") are developed and controlled by volunteer Owner personnel and Owner User Council representatives on the North American Background Screening Consortium Steering Committee (herein after referred to as "the Consortium Steering Committee"). All affected participants in the Program must comply with applicable requirements of Fair Credit Reporting Act (FCRA) and other governing state and federal laws.

The Houston Area Safety Council (HASC) is the "Program Custodian". The Program Custodian is responsible for implementing the Program in accordance with the Program requirements and maintaining a Program Lookup Application to determine a Contractor Employee's  background screen status (**Active** or **Inactive**).  The Program Custodian shall

1

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

not have access to any Contractor Employee's background screen grade or underlying background screen report details.

The Program may be modified at any time by the Consortium Steering Committee. Participating Owners, Contractor Employers and Consortium TPAs shall be notified of any modification before implementation.

Alliances or associations with equivalent background screening programs and different industrial area Owner associations may be developed if approved by the Consortium Steering Committee.

**4    OVERVIEW OF THE BACKGROUND SCREENING CONSORTIUM PROCESS**

An overview of the information flow and significant elements of the Program is provided in Appendix E "Overview of Background Screening Consortium Process".

**5    PROGRAM APPLICATION**

Industrial facility Owners will voluntarily decide if their site(s) will participate in the Program. Owners that choose to participate in the Program accept the validity of the background screens developed under the Program.

Participating Owners will determine which contract companies (including subcontractors) will be included in the Program, and establish their own site background screening security requirements (maximum background screen grade). Participating Owners will communicate their decision to participate in the Program to affected Contractor Employers.

Contractor Employers shall select one or more of the participating Consortium TPAs approved by the Program Custodian and the Consortium Steering Committee to conduct background screens. A list of approved Consortium TPAs is available at *www.nabsc.com*. Contractor Employers will be required to enter into a User Agreement with the selected Consortium TPA(s).

Contractor Employers shall authorize one or more of their employees or agents to interface with the selected Consortium TPA(s) on their behalf to obtain background screen consent forms from Contractor Employees, schedule background screens, assist in the Pre-Adverse and Adverse Action process, and monitor Contractor Employee background screen expiration dates.

Each Consortium TPA must maintain a minimum of $3 million of "Errors and Omissions Insurance". Each Consortium TPA shall determine their own pricing structure that includes all costs associated with performing background screens under the Program.

It is the responsibility of the Contractor Employer to ensure that a background screen is performed on all Contractor Employees considered for assignment to participating Owner facilities. A Contractor Employer must not assign a Contractor Employee to an Owner's facility if the individual has an **Inactive** status for that Owner's site.

The Contractor Employer and its selected Consortium TPA(s) have full responsibility for compliance with all applicable legal requirements regarding privacy rights related to obtaining background screens under the Program and must comply with all legal requirements that may apply in the jurisdictions in which the Owner facilities are located, the background checks are performed and the residence of the applicant. To the extent

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

there is any conflict between the requirements described in the Program and applicable laws and regulations, the latter controls.

The Contractor Employer has full responsibility for compliance with all legal requirements regarding authorization to work, visas, work permits or any related documentation in all jurisdictions in which Contractor Employees are assigned to work.

Owners shall not direct or in any manner be involved in hiring decisions Contractor Employers may make regarding a screened Contractor Employee. The background screen status (**Active** or **Inactive**) shall only be used by the Owner to determine a Contractor Employee's eligibility for access to the Owner's site. All hiring and assignment decisions are the sole responsibility of the Contractor Employer. _If a Contractor Employer uses background screen information from the Program to determine an individual's employment eligibility, the Contractor Employer must follow all applicable FCRA and state requirements, including notifying the TPA of this change prior to the background screen being done._

Contractor Employers shall hold the Owners harmless regarding any litigation that might arise from any hiring or assignment decision made by the Contractor Employer regarding a background screening report.

If legal requirements and customary practices in non-United States jurisdictions limit the implementation of the Program by a Contractor Employer, the Contractor Employer shall work with the affected Owner to identify reasonable alternatives to accomplish the intent of the Program. Any alternative methods agreed to by an Owner and Contractor Employer are not a part of the Program unless approved by the Consortium Steering Committee and incorporated into the Program.

**6    CONSENT FOR BACKGROUND CHECKS AND RELEASE OF INFORMATION**

Contractor Employees must consent, in writing, to allow a background screen to be performed under the Program by a Consortium TPA and allow the release of the information. At a minimum, each consent shall include the information included in Appendix B "Sample Background Screen Consent Form".

**7    BACKGROUND SCREEN REPORTS AND GRADES**

Background screens shall be administered by Consortium TPAs participating in the Program.  If a Consortium TPA utilizes the services of background screen investigation firms, subcontractors or other third parties to perform background screens for the Program, the Consortium TPA must verify their qualification and periodically audit their compliance with the Program requirements.  The Consortium TPA must also provide the third parties with training on the Program requirements and the Consortium TPA's business practices.

Prior to performing background screens under the Program, the Consortium TPA must verify that the Contractor Employer requesting background screens has a permissible purpose under the FCRA for obtaining the information. Consortium TPAs must obtain appropriate written consent from the Contractor Employee before the background screen is performed.

Background screens shall be performed using the best available commercial and national/state resources, databases and methods, and the grading criteria identified in Appendix C, "Background Screening Search and Grading Criteria".  The list of relevant

# NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM

criminal convictions in Appendix C was specifically designed to identify those persons with the potential to endanger people and assets.

Each background screen completed under the Program shall result in the assignment of a background screen grade for the Contractor Employee as documented in Appendix C. .    If a Contractor Employee refuses a background screen under the Program, no background screen will be performed and no grade will be established.

Each Consortium TPA is responsible for the delivery of accurate background screen reports performed under the Program and the resulting background screen grade, to the extent the information obtained from the resources identified in Appendix C is correct.  Consortium TPAs shall hold participating Owner Companies and Safety Councils harmless from any and all litigation arising from the contents of background screening reports the Consortium TPAs prepare and issue.

Access to background screen information will be limited as follows:

| | Background Screen Report Details | Background Screen Grade | Background Screen Status (Active or Inactive) for an Owner's Site |
|---|---|---|---|
| Contractor Employer who Ordered the Background Screen<br><br>(Contractor Employer is Participating in Program) | **Yes** | **Yes** | **Yes** |
| Contractor Employers not Participating in the Program | No * | No | No |
| Subject Contractor Employee | **Yes** | **Yes** | No |
| Owners Participating in the Program | No * | No | **Yes** |
| Owners not Participating in the Program | No * | No | No |
| Reciprocal Safety Councils Participating in the Program | No | No | **Yes** |
| Safety Councils not Participating in the Program | No | No | No |
| Program Custodian | No | No | **Yes** |

* May be allowed access to background screen report details only with written authorization by the subject Contractor Employee

4

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

Background screens completed on Contractor Employees outside of the Program can be included in the Program only if <u>all</u> of the following conditions are met:

- Previous background screen was completed by a Consortium TPA currently participating in the Program;
- The Consortium TPA has appropriate consent from the Contractor Employee to release the information
- Previous background screen includes all criteria identified in Appendix C;
- Previous background screen is less than two (2) calendar years old; and
- The Consortium TPA converts previous background screen results into a background screen grade per criteria in Appendix C.

Contractor Employers have an ongoing duty to advise Contractor Employees to immediately inform the Contractor Employer of any conviction record or other "hits" (as identified in the first paragraph of Appendix "C") arising <u>after</u> the establishment of the Contractor Employee's background screen grade in the Program.  If the Contractor Employer becomes aware of any conviction, and the conviction would result in a background screen grade that is excluded by the Owner where the Contractor Employee is currently working, it must inform any affected Owners in writing, order a new background screen on the Contractor Employee and take appropriate actions based on the new background screen grade. A participating Owner may restrict the Contractor Employee's access to it's facility while the new background screen is being performed, unless the Owner agrees to continuation of the assignment pending results of the new background screen.

If a conviction has been removed from a Contractor Employee's record <u>after</u> a background screen has been completed under the Program, or if a conviction is no longer within the relevant time frames established in Appendix C, the Contractor Employee may request his/her Contractor Employer to have a Consortium TPA perform a new background screen to update his/her background screen grade in the Program. The decision to order a new background screen is at the discretion of the Contractor Employer.

## 8    <u>ELIGIBILITY FOR ACCESS TO OWNER FACILITIES</u>

Each participating Owner shall determine their background screen security level for the Program. The background screen security level selected by an Owner shall designate the maximum background screen grade that will be allowed for a Contractor Employee to be eligible for access to the Owner's site. This information will be used by the NABSC Program Lookup Application.

When a participating Owner, Contractor Employer or reciprocal Safety Council uses the NABSC Program Lookup Application to determine if a Contractor Employee meets an Owner's background screen security requirements, the Program Lookup Application will compare the Owner's requirements to the background screen grade provided by the Consortium TPA and classify the Contractor Employee with either an **Active** or **Inactive** status <u>for that Owner's site</u>.

- Any Contractor Employee who does not have a current background screen grade in the Program or has a background screen grade that has expired will be classified as **Inactive** for <u>all</u> participating Owner sites;
- Any Contractor Employee who does not meet a particular Owner's background screen security requirements will be classified as **Inactive** for that Owner's site;
- Any Contractor Employee who meets a particular Owner's background screen security requirements will be classified as **Active** for that Owner's site.

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

Owners may deny access to their property to any Contractor Employee whose background screen grade does not meet the Owner's background screen security requirements (**Inactive** status) and to Contractor Employees who refuse to comply with the requirements of the Program. A Contractor Employee with a background screen grade that meets a participating Owner's background screen security requirements (**Active** status) is eligible for access to a participating Owner's property. However, any Owner reserves the right to allow or deny access without regard to background screening eligibility.

For example, if an Owner selects a background screen grade of "03" (Lesser Felonies) as its maximum background screen grade, then Contractor Employees with background screen grades of "04" through "07" WOULD NOT meet that Owner's background screen security requirements and therefore would have an **Inactive** status for that Owner's site. Conversely, Contractor Employees with background screen grades of "00" through "03" WOULD meet that Owner's background screen security requirements and would have an **Active** status for that Owner's site. (This example is for illustration purposes only and is not intended to reflect any Owner's actual requirements.)

It is the Contractor Employer's responsibility to not assign a Contractor Employee with a background screen grade above an Owner's background screen security level to work at the Owner's site. Participating Contractor Employers shall not knowingly use the services of any individual on Owner's premises who does not meet the Owner's site background screen security requirements without written approval from the Owner (see Section 9 "Waivers and Exemptions").

If a Contractor Employee who does not meet an Owner's background screen security requirements arrives at that Owner's site, the Owner will inform the Contractor Employee to contact his/her Contractor Employer for an explanation.

## 9   WAIVERS AND EXEMPTIONS

If business needs warrant, a Contractor Employer may petition an Owner for a waiver or exemption for a Contractor Employee who is not active in the Program or did not receive a background screen grade that meets the Owner's security requirements. The Owner may, at its sole discretion, grant waivers or exemptions to Contractor Employers and/or all or part of its Contractor Employees from the requirements of the Program.

Each Owner shall maintain its own background screen waiver or exemption criteria and process. If the Owner's waiver or exemption process requires the Owner to have access to the Contractor Employee's background screen report, the Consortium TPA must obtain appropriate release/disclosure from the Contractor Employee.

Waivers or exemptions shall be executed at the discretion of the Owner on a case by case basis and will have no impact on the background screen grade developed by the Consortium TPA. The Consortium TPA shall not alter or amend a background screen report or resulting background screen grade developed under the Program based on a waiver or exemption provided by any Owner.

Contractor Employers shall not construe an exemption or waiver as a promise of any future exemptions or waivers. An Owner may revoke any waiver or exemption granted to a Contractor Employer and/or t its Contractor Employees at any time.

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

## 10  CONFIDENTIALITY

Consortium TPAs shall maintain the confidentiality of all Contractor Employee background screen results, except as authorized by a Contractor Employee's consent, or as required by law. .  No background screen report details or grade shall be sent to participating Owners, the Program Custodian or participating reciprocal Safety Councils. The Contractor Employee's background screen report and grade shall not be available for public viewing.

## 11  TRAINING

Each participating Contractor Employer shall advise all Contractor Employees, in writing,  of their rights and responsibilities under the Program.

Contractor Employer Representatives (CER's) authorized by the Contractor Employer must receive training from the selected Consortium TPA on the Program requirements and the Consortium TPA's business practices prior to administering any background screens.

## 12  PROGRAM AUDIT

Consortium TPAs must maintain all records related to background screen performed under the Program as long as they are participating in the Program. Contractor Employers must follow applicable state laws regarding retention of records.

Upon request of the Program Custodian, Consortium TPAs shall be required to provide statistical data related to background screens for the purpose of determining the effectiveness of the Program. No personal identifier information of any Contractor Employee may be included.

The Consortium TPAs participating in the Program shall be audited, at their own expense, by an independent third party selected by the Program Custodian, with input from the Consortium Steering Committee, to assure compliance and Program effectiveness. Auditing of Consortium TPAs will be random, not to exceed three years between audits. Any Consortium TPA may be audited by the Program Custodian at any time. The scope of the audit shall be determined by the Program Custodian with input from the Consortium Steering Committee.

The Program Custodian shall ensure appropriate corrective actions are taken in a timely manner on any deficiencies discovered in an audit.

Any Owner participating in the Program may audit a Contractor Employer's records at any time.

7

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

**APPENDIX A**

**DEFINITIONS OF KEY TERMS**

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM** -- a program established by participating Owners and Owner User Groups and used by participating Owners, Contractor Employers, and Contractor Employees to protect the Owners assets and the people working at the Owner's facilities (herein after referred to as the Program).

**OWNER** -- owner of an industrial facility who utilizes the services of Contractors and chooses to participate in the Program and accepts the Program screen as a valid background screen.

**CONTRACTOR EMPLOYER** -- a Contractor company that assigns Contractor Employees to work at participating Owner facilities.

**CONTRACTOR EMPLOYEE** -- an employee of a participating Contractor Employer who has consented to allow the backgrounds screens provided by the Program as a condition of access to participating Owner facilities.

**CONSORTIUM STEERING COMMITTEE** -- a working committee of volunteers made up of Owner personnel and Owner User Council representatives. The committee is responsible for the Program content and working to continuously improve the Program.

**PROGRAM CUSTODIAN** -- The Houston Area Safety Council (HASC) is the Program Custodian and is responsible for implementing the Program in accordance with the Program requirements, approving Consortium Third Party Administrators (TPAs), maintaining a Program Lookup Application, and auditing the Program to assure compliance and effectiveness.

**PRE-ADVERSE ACTION** -- preliminary notice given to an applicant indicating information contained in his/her background screening report, if accurate, may restrict their eligibility for access to some participating Owner facilities or may cause employment to be denied.

**ADVERSE ACTION** -- final notice, after issuance of Pre-Adverse Action letter, given to applicant notifying them that their eligibility for access to some participating Owner facilities may be restricted, or they are no longer being considered for employment for the position in question.

**CONSORTIUM THIRD PARTY ADMINISTRATOR (Consortium TPA)** -- a company authorized by the Program Custodian that is responsible for conducting (or utilizing qualified background screen investigation firms, subcontractors or other third parties to conduct) background screens and report the results per the criteria set forth by the Program, managing the Pre-Adverse Action process to ensure the integrity of the background screen grade, making background screen grades available to the NABSC Program Lookup Application, and managing the Adverse Action process.  A list of approved Consortium TPAs is available at *www.nabsc.com.*

**CONTRACTOR EMPLOYER REPRESENTATIVE (CER)** -- Contractor Employee(s) authorized by the Contractor Employer to interface with a Consortium TPA on the Contractor Employer's behalf to obtain background screen consent forms from Contractor Employees, schedule background screens, assist in the Pre-Adverse and Adverse Action process, and monitor Contractor Employee background screen expiration dates.

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

**BACKGROUND SCREEN INVESTIGATORS** - a firm, subcontractor or other third party qualified and authorized by a Consortium Third Party Administrator to conduct background screens per the criteria set forth by the Program.

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

**APPENDIX B**

**SAMPLE BACKGROUND SCREEN CONSENT FORM**

**NOTICE AND ACKNOWLEDGMENT**

[IMPORTANT -- PLEASE READ CAREFULLY BEFORE SIGNING ACKNOWLEDGMENT]

<u>NOTICE REGARDING BACKGROUND INVESTIGATION</u>

**[Contractor employer]**, your employer, may obtain information about you from a consumer reporting agency for employment or other permissible purposes. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal interviews with sources such as your neighbors, friends, or associates.  These reports may include employment history and reference checks, motor vehicle history ("driving records"), sex offender status, Social Security Verification/Trace, national criminal database searches, and Terrorist Watch list information. These reports may be obtained at any time after receipt of your authorization and, if you are hired, throughout your employment.

These reports will be reported to **[Contractor employer]**.  Information in these reports may result in restricting your access to some Owner's facilities who are participating in the North American Background Screening Consortium (NABSC). **For more information on the NABSC Program, refer to the NABSC program description.**

The information in the consumer report will be used to generate a background screen grade.. Each Owner participating in the NABSC will provide the NABSC Program Custodian with the maximum background screen grade that will be allowed for Contractor Employees to be eligible for access to that Owner's site. The NABSC Program Lookup Application will compare the Owner's requirements to the background screen grade provided by **[Consortium TPA]** to classify you with either an **Active** or **Inactive** status <u>for that Owner's site</u>.

- If you do not meet a particular Owner's background screen security requirements, you will be classified as **Inactive** for that Owner' site;
- If you meet a particular Owner's background screen security requirements, you will be classified as **Active** for that Owner's site.

If you have an **Active** status for an Owner's site, you will be eligible for access to that Owner's property. However, any Owner reserves the right to allow or deny access without regard to background screening eligibility.

You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report. Please be advised that the nature and scope of the most common form of investigative consumer report obtained with regard to applicants or employees is an investigation into your employment history conducted by **[Consortium TPA name, address, and telephone number – including toll-free number]** or another outside organization. The scope of this notice and authorization is all-encompassing, however, allowing **[Name of Contractor Employer]** to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and, throughout the course of your employment with **[Name of Contractor Employer]** to the extent permitted by law.. As a result, you should carefully consider whether to exercise your right to request disclosure of the nature and scope of any investigative consumer report.

Owners, Contractor Employers and reciprocal Safety Councils participating in the NABSC Program will have access to the NABSC Program Lookup Application to verify your background screen security status (**Active** or **Inactive**) for a particular Owner's site. **Participating Owners and reciprocal Safety Councils will not have access to** <u>**the details of the background report**</u> **without additional authorization by you.**

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

## ACKNOWLEDGMENT AND AUTHORIZATION

I acknowledge receipt of the NOTICE REGARDING BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of those documents. I hereby authorize the obtaining of "consumer reports" and/or "investigative consumer reports" at any time after receipt of this authorization and, for a period of two years from the completion of the background screen. I further authorize and direct **[Consortium TPA]** to make available my subsequent background screen grade to the NABSC Program Lookup Application for the purpose of determining my eligibility for access to Owner's facilities. To these ends, I hereby authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, employer, insurance company, or any other source to furnish any and all background information requested by **[Consortium TPA]**, another outside organization acting on behalf of **[Consortium TPA]**, the NABSC Program Custodian, and/or **[Name of Contractor]** itself. I agree that a facsimile ("fax"), electronic or photographic copy of this Authorization shall be as valid as the original.

Print Name:

Current Address:

Street:

City:                              State:                    Zip Code:

:

Drivers License State:                      License Number:

***The following is for identification purposes only to perform the background check and will not be used for any other purpose:***

Social Security Number:

Date of Birth (MM/DD/YYYY):

Other Names Known by or Former Names:

List all States and Counties you have resided in during the past seven (7) years:

_____
_____
_____
_____

Signature:_____    Date: _____

The Consortium TPA will include:
- "A Summary of Your Rights Under the Fair Credit Reporting Act"
- Any state specific consent requirements

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

**APPENDIX C**

<u>**BACKGROUND SCREENING SEARCH AND GRADING CRITERIA**</u>

The background screen for Contractor Employees shall include a criminal record check of federal, state and county/parish (or equivalent) records, as allowed by law, for both misdemeanors and felonies where the disposition is a:

- Conviction
- Pending or adjudication withheld
- Deferred adjudication (Background Screening Providers shall only report non-conviction records (including as example, deferred adjudication, adjudication withheld, dismissed records, etc.) within seven years from the date of the charge or offense date.)
- No contest plea or any other disposition (such as probation) where an individual must complete some criteria before a final disposition is determined
- Open warrant

The background screen shall take place in all jurisdictions in which the individual has lived and worked during the previous seven (7) years based upon the disposition date and additionally, any jurisdictions found while searching national, state and other sources that are required to be used.

Background screens shall be performed using the best available commercial and national/state resources, databases and methods. The Consortium TPA must perform due diligence to verify the Contractor Employee's identity (using available key identifiers such as name, SSN, date of birth, , etc.) associated with any criminal history discovered during the background screening process before reporting a background screen grade for the Program.

Each background screen search shall consist of the following:

1.  **COLLECTION OF INFORMATION FROM CONTRACTOR EMPLOYEES REGARDING PLACES OF RESIDENCE AND EMPLOYMENT**

    The Consortium TPA shall obtain employment data for the previous seven (7) years from the Contractor Employee's background screen application. The Consortium TPA shall verify relevant places of residence for the previous seven (7) years from the application, and the Social Security Number Trace and Motor Vehicle History – all three must be used in conjunction to determine past resident history. In the case of military personnel who have served overseas, the military person's U.S. permanent duty station(s) shall be used.

    An Owner has the option to designate that certain Contractor Employers will need to adhere to more stringent background check requirements when performing "Security Sensitive Services". For those designated Contractor Employers, the following shall apply: The Consortium TPA shall verify and identify both relevant places of residence and employment for the previous seven (7)years from the Contractor Employee's background screen application, and the Social Security Number Trace and Motor Vehicle History (if available) – all three must be used in conjunction to determine past employment and resident history. In the case of military personnel who have served overseas, the military person's U.S. permanent duty station(s) shall be used.

2.  **SOCIAL SECURITY NUMBER (SSN) TRACE**

    Prior to initiating any criminal background check, a Social Security Number (SSN) trace shall be made by the Consortium TPA to confirm the Contractor Employee's identity

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

(using available key identifiers such as legal name, maiden name, AKA name and SSN)
and to determine relevant places of residence for the previous seven (7) years.

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

The SSN trace report is derived from credit bureau records. The sources include, but are not limited to, applications for utilities, credit checks for loans and credit cards, and qualification for rental agreements. Each Consortium TPA shall include within its search the above listed data along with capabilities to search AKA/Maiden Names, alerts for fraudulent patterns relating to the SSN, and verify the SSN is valid in accordance with time and state of issuance.

If the SSN cannot be verified, the Consortium TPA shall notify the Contractor Employer who ordered the background screen to assist in resolving the issue. If the SSN still cannot be verified, the background screening process stops and no background screen grade shall be reported.

3.    **DEPARTMENT OF MOTOR VEHICLE RECORDS/STATE IDENTIFICATION SEARCH**

If a valid SSN verification is made, then a check of the State Department of Motor Vehicle Records (DMV) shall be made to check for a valid state identification and to examine the Contractor Employee's driving record.  If available, the driving record is used to corroborate address information, and obtain certain criminal convictions. If the Consortium TPA is unable to verify state identification, a Pre-Adverse Action Letter shall be issued to the Contractor Employee and Contractor Employer. The background screening process stops until resolution of the state identification issue. If the state identification issue is not resolved, the Consortium TPA shall notify the Contractor Employer and no background screen grade shall be reported.

4.    **SEVEN (7) YEAR CRIMINAL HISTORY SEARCH**
      **(COUNTY or PARISH LEVEL / STATE LEVEL / FEDERAL DISTRICT LEVEL**)

The Consortium TPA shall complete a seven (7) year Criminal History Search in all counties, states (if available), and federal jurisdictions derived from the resident history and any employment jurisdiction given by the Contractor Employee as allowable by law. The Consortium TPA shall utilize field investigators, and/or the most up-to-date data source available to provide a complete background screen that is current in accordance with the FCRA and state law.

5.    **NATIONAL CRIMINAL DATABASE SEARCH**

The National Criminal Database Search is a supplemental search to capture possible records that may exist within current states of residence, or records that are existent in jurisdictions outside current states of residence. Records should derive from not only county and state repositories, but shall also include a search of records readily available from each state's:

- Administration Office of the Courts
- Department of Corrections
- Prison Release Data (State and Federal)
- Office of Parole Boards
- Sex Offender Registries

6.    **PATRIOT ACT / TERRORIST WATCH LIST SEARCH**

This search covers information from numerous publicly available federal agencies. These agencies compile the names of persons who are wanted by federal law enforcement, barred from the United States, illegal immigrants, specially designated nationals, terrorists, narcotics traffickers, blocked persons, etc. by checking the following sources:

- Denied Persons List

14

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

- Fugitive List
- Office of Foreign Assets Control (OFAC)
- Terrorist Watch List

## RELEVANCE OF CRIMINAL DISPOSITIONS

All criminal dispositions discovered during the background screening process that occurred within the previous seven (7) years, based upon the disposition date, shall be considered relevant for the Consortium TPA to develop and report the background screen grade under the Program, unless prohibited by law.

In addition, any criminal dispositions related to a prison release date within the last seven (7) years shall be considered relevant for developing and reporting the background screen grade, as allowed by law, **without regard to the criminal conviction disposition date**.  For example, if a criminal conviction with a disposition date over seven (7) years ago resulted in a prison sentence, the conviction would still be relevant for developing a background screen grade under the Program if the prison release date was within the last seven (7) years.

## EXAMPLES:

Scenario 1 - Individual has completed a prison sentence WITHIN last 7 years for a conviction with a disposition date WITHIN last 7 years.

Scenario 2 - Individual has completed a prison sentence WITHIN last 7 years for a conviction with a disposition date OVER 7 years ago.

Scenario 3 - Individual completed a prison sentence OVER 7 years ago.

**Scenarios 1 and 2 WILL be considered relevant for developing a background screen grade for NABSC. Scenario 3 WILL NOT be relevant for developing a background screen grade for NABSC.**

Scenario 4 - Individual is CURRENTLY on probation or parole for a crime committed/conviction WITHIN last 7 years.

Scenario 5 - Individual is CURRENTLY on probation or parole for a crime committed/conviction OVER 7 years ago.

Scenario 6 - Individual has COMPLETED probation or parole WITHIN last 7 years for a crime committed/conviction WITHIN last 7 years.

Scenario 7 - Individual has COMPLETED probation or parole WITHIN last 7 years for a crime committed/conviction OVER 7 years ago.

Scenario 8 - Individual has COMPLETED probation or parole  OVER 7 years ago.

**Scenarios 4-7 WILL be considered relevant for developing a background screen grade for NABSC. Scenario 8 WILL NOT be relevant for developing a background screen grade for NABSC.**

## BACKGROUND SCREEN GRADE DESIGNATION

For each background screen completed under the Program, the Consortium TPA shall identify the type(s) of convictions or other "hits" (as identified in the first paragraph of Appendix "C") found during the relevant time frame and designate a background screen grade related to these

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

"hits". The background screen grade shall indicate that conviction(s) or "hit(s)" **were not found (grade 00)** or **were found (grades 01 through 07)** as defined below.

A background screen may find "hits" in more than one grade level. The highest background screen grade defined shall be the designated grade. For example, if a **lesser felony (03) and a higher felony (05)** were both found, the grade would be **05.** In another case, if a **violent misdemeanor (02) and a higher felony (05)** were both found, the grade for the screen would be **06** because that is the grade if both of these conviction types are found in the same background screen.

. **Initial background screen grades of 01 through 07** shall be considered "provisional". See "**Pre-Adverse and Adverse Action Communications and Provisional Background Screen Grades**" paragraph below.

## Background Screen Grade Definitions

| 00 | Clear Record, nothing found. |
|----|------------------------------|
| 01 | One or more **"non-violent misdemeanors"** were found. This includes any misdemeanor not shown on the list of violent misdemeanors (02) below with the exception of minor traffic violations.    This exception does not apply to driving while intoxicated or driving under the influence violations. |
| 02 | One or more **"violent misdemeanors"** were found. These misdemeanors are any type shown on the list below. |
| 03 | One or more **"lesser felonies"** were found. This includes any felony not shown on the list of higher felonies (05) below. |
| 04 | One or more **"violent misdemeanors" and** one or more "**lesser felonies"** were found. |
| 05 | One or more **"higher felonies"** were found. These felonies are any type shown on the list below. |
| 06 | One or more **"higher felonies"** and one or more **"violent misdemeanors"** were found. |
| 07 | The person was found to be on the current **Patriot Act List** (specially designated nationals, terrorists, narcotics traffickers, blocked persons, etc.). |

## Violent Misdemeanor Crimes (02)

The following list **represents a selected list of misdemeanor types** to be used for the purposes of assigning a numeric "graded" value.

| | |
|---|---|
| • Assault | • Harassment |
| • Battery | • Resisting arrest |
| • Bodily Injury | • Resisting Public Officer |
| • Cruelty to a Juvenile | • Robbery |
| • Deadly Conduct | • Terrorist Threats |
| • Disorderly Conduct | • Throwing a deadly missile |
| • Disorderly Person | • Violation of restraining order |
| • Escape | • Weapon |

16

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

**Higher Felony Crimes (05)**

The following list **represents a selected list of felony types** to be used for the purposes of assigning a numeric "graded" value.

| | |
|---|---|
| • Transportation security incident (i.e. Security incident involving a significant loss of life, environmental damage, transportation system disruption, or economic disruption<br>• Aiding others in terrorism<br>• Aircraft piracy outside the special aircraft jurisdiction of the United States, 49 U.S.C. 46502*<br>• Arson<br>• Assault (including aggravated and or sexual)<br>• Battery<br>• Bribery<br>• Burglary (breaking and entering)<br>• Carjacking<br>• Carrying a weapon or explosive aboard aircraft, 49 U.S.C. 46505*<br>• Commission of certain crimes aboard aircraft in flight, 49 U.S.C. 46506*<br>• Computer crimes (hacking, fraud, damage to property)<br>• Conveying false information and threats, 49. U.S.C. 46507*<br>• Credit card fraud<br>• Criminal anarchy<br>• Denied or removed under the Immigration And Nationality Act (8 U.S.C. 1182 Et Seq)*<br>• Kidnapping<br>• Lighting violations involving transporting controlled substances, 49 U.S.C. 46315*<br>• Misprision of treason<br>• Monetary instrument abuse<br>• Perjury and false swearing<br>• Purse snatching<br>• Racketeering and RICO violations<br>• Rape<br>• Robbery<br>• Sedition<br>• Sex crimes<br>• Smuggling<br>• Tax evasion | • Destruction of an aircraft or aircraft facility, 18 U.S.C. 32*<br>• Drug offenses<br>• Embezzlement<br>• Espionage<br>• Explosive offenses (devices, fake explosive devices, incendiary devices, dangerous articles, importation, manufacture, distribution, storage)<br>• Extortion<br>• False imprisonment - armed or hostage taking<br>• False personating (peace office, public official)<br>• Forgery and counterfeiting<br>• Fraud (including dishonesty and misrepresentation)<br>• Homicide / murder / manslaughter / including solicitation to murder (excluding negligent manslaughter)<br>• Identity theft<br>• Immigration violations<br>• Improper transportation of a hazardous material, 49 U.S.C. 46312*<br>• Interference with air navigation, 49 U.S.C. 46308*<br>• Interference with flight crew members or flight attendants, 49 U.S.C. 46504*<br>• Terrorism<br>• Theft-larceny (including felony shoplifting)<br>• Treason<br>• Unlawful entry into an aircraft or airport area that serves air carriers or foreign air carriers contrary to established security requirements, 49 U.S.C. 46314*<br>• Weapons (any offense-carrying a concealed weapon, weapon on premises, illegal use, manufacture, store, sell, distribute, discharge, etc.)<br>• Traffic offenses i.e., traffic homicide, hit and run (excluding DWI/DUI convictions) |

*United States Code is offered as a reference to the nature of the crime. Similar state laws are also considered disqualifying.

**PRE-ADVERSE AND ADVERSE ACTION COMMUNICATIONS AND
PROVISIONAL BACKGROUND SCREEN GRADES**

Any initial background screen grade between "01" and "07" (any grade other than "00") shall initially be identified as a "provisional" grade. (The provisional grade is considered a valid background screen grade in the Program and can be used by the Contractor Employer for placement of Contractor Employees at participating Owner sites that accept the assigned

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

background screen grade. Completion of the Pre-Adverse Action process may result in a final background screen grade that is lower than the provisional background screen grade.)

When a provisional background screen grade is identified, the Consortium TPA shall issue a Pre-Adverse Action Letter to the Contractor Employee and Contractor Employer who ordered the background screen, along with a copy of the background screen report and grade, and a copy of the Consumer Notification Rights, informing the individual of their right to dispute the background screen report and notifying the individual that the provisional background screen grade may restrict their eligibility for access to some participating Owner facilities.

If the Contractor Employee does not dispute the results of the background screen search within five (5) business days after receipt of the results, the Consortium TPA shall remove the provisional status from the background screen grade. This grade shall be considered the final background screen grade.

If the Contractor Employee finds a discrepancy in the initial background screen report, he/she shall inform the Consortium TPA for dispute resolution.  Disputes of criminal history findings shall be reinvestigated by the Consortium TPA according to all applicable laws. Resolution of disputes must be completed within thirty (30) calendar days.  After this time, the Consortium TPA shall remove the provisional status from the background screen grade. This grade shall be considered the final background screen grade.

The Consortium TPA shall investigate and modify the provisional background screen report and grade if new information is discovered that warrants the change. If the initial background screen grade was accurate, the Consortium TPA shall remove the provisional status from the background screen grade. If the final background screen grade is different than the initial provisional background screen grade, the Consortium TPA shall revise the initial provisional background screen grade. If modified, the Consortium TPA shall also send a copy of the background screen report and resulting grade to the Contractor Employee and the Contractor Employer who ordered the background screen along with another Pre-Adverse Action letter.

If the final background screen grade is between "01" and "07" (any grade other than "00"), the Consortium TPA shall issue an Adverse Action Letter to the Contractor Employee indicating the background screen grade may restrict their eligibility for access to some participating Owner facilities.

All Pre-Adverse and Adverse Actions and any communications with the Contractor Employee are the responsibility of the Contractor Employer and their chosen Consortium TPA.  The Contractor Employer and their chosen Consortium TPA shall further assume full responsibility for complying with all local, state and federal laws related to Pre-Adverse and Adverse Action requirements on behalf of itself and any obligations participating Owner facilities may have.

The Contractor Employer and their chosen Consortium TPA shall indemnify and hold participating Owners harmless from any and all claims, losses, damages and any costs (including attorneys fees) that may be related to or arise from any adverse action requirements.

**BACKGROUND SCREEN FREQUENCY**

All background screen grades assigned under the Program shall be considered valid and current for a period of two (2) years in the Program. A new background screen must be ordered by the current Contractor Employer prior to the expiration of the background screen.

18

**NORTH AMERICAN BACKGROUND SCREENING CONSORTIUM**

**APPENDIX D**

**SAMPLE PRE-ADVERSE AND ADVERSE ACTION LETTERS**

**Sample Pre-Adverse Action Letter**

Date

Dear _____ :

Based on your prior consent, a background screen was conducted on you by a consumer reporting agency for the purpose of determining your eligibility for access to Owner facilities participating in the North American Background Screening Consortium (NABSC).

Information contained in the background screen report, a copy which is being given to you, from **[Consortium TPA, address and toll-free phone number]** (a consumer reporting agency), may restrict you being assigned to some Owner's facilities. **[Consortium TPA]** has not made this decision and is not able to explain why the decision was made.

**[Consortium TPA]** is enclosing a copy of the report and a copy of your rights under the federal Fair Credit Reporting Act. You have the right to obtain a free copy of your file from **[Consortium TPA]** if you request the report within 60 days. **You also have the right to dispute with the [Consortium TPA] the accuracy or completeness of any information in the report.**

**If you believe the information listed above is not accurate, please contact [insert name, telephone number of contact] within five business days of receipt of this letter.**

Sincerely,

[**Consortium TPA** Representative's Name]
[**Consortium TPA** Representative's Title]

Encl: FTC Summary of Rights

# Exhibit 2

DISA Global Solutions, Inc.

# DISA BACKGROUND SCREENING CONSORTIUM
## BACKGROUND SCREENING POLICY

**TABLE OF CONTENTS**

1. OBJECTIVE

2. KEY BENEFITS

3. PROGRAM CONTENT AND OWNERSHIP

4. OVERVIEW OF THE BACKGROUND SCREENING CONSORTIUM PROCESS

5. PROGRAM APPLICATION

6. CONSENT FOR BACKGROUND CHECKS AND RELEASE OF INFORMATION

7. BACKGROUND SCREEN REPORTS AND GRADES

8. ELIGIBILITY FOR ACCESS TO OWNER FACILITIES

9. WAIVERS AND EXEMPTIONS

10. CONFIDENTIALITY

11. TRAINING

12. PROGRAM AUDIT


APPENDIX A:  DEFINITIONS OF KEY TERMS

APPENDIX B:  SAMPLE BACKGROUND SCREEN CONSENT FORM

APPENDIX C:  BACKGROUND SCREENING SEARCH AND GRADING CRITERIA

© 2007 – 2015, DISA Global Solutions, Inc., All Rights Reserved

## 1.0  OBJECTIVE

Participating industrial facility Owners recognize the benefits of Contractor Employee background screening in identifying individuals who may pose a risk to Owner financial assets and the people working at Owner facilities through behavior that may cause serious safety incidents, workplace violence, domestic terrorist acts, and theft of materials, equipment or technology.

DISA has created a standardized background screening program to promote workplace safety and to minimize the burden to contractors of complying with multiple background screening requirements.  This program is known as the DISA Background Screening Consortium (herein referred to as "the Program").  The target population for the Program includes Contractor Employees providing maintenance, construction and operational support services at petrochemical facilities such as chemical plants and refineries, energy production and utility facilities, and other industrial manufacturers.  However, Owners shall define the target workforce at their facilities.   This program does not address foreign workers.

A fair and objective standardized Contractor background screening process that includes identity verification, criminal background review and terrorist watch list screen will promote a safe and secure working environment for both Owner and Contractor personnel, and minimize incidents that may affect the surrounding community.

## 2.0  KEY BENEFITS

The Program will yield the following benefits:

- Establishes standardized background screen criteria; Contractor Employers do not have to comply with multiple Owner requirements
- Includes multiple professional background screening Consortium Third Party Administrators (Consortium TPAs) to perform the background checks, giving Contractor Employers a choice, providing competition and controlling costs
- Allows participating Owners flexibility to determine which contract companies will be included in the Program
- Graded security levels allows participating Owners flexibility to establish their own site access requirements
- Provides Owners and Contractor Employers with ready access to a Contractor Employee's background screen security  status (**Active** or **Inactive**), for each participating Owner via DISA's online management system, DISAWorks®
- A Contractor Employee's background screen grade will be portable if they change employers or begin working at another Owner facility, reducing repetitious background screening and related costs
- The Program can be easily audited to ensure compliance
- A decreased number of safety and security related incidents

## 3.0  PROGRAM CONTENT AND OWNERSHIP

The requirements of the Program are developed and controlled by the DISA Background Screening Consortium.  All affected participants in the Program must comply with applicable

requirements of Fair Credit Reporting Act (FCRA) and other governing state and federal laws.

DISA Global Solutions, Inc. (herein referred to as "DISA") is the Program Custodian.  The Program Custodian is responsible for implementing the Program in accordance with the Program requirements and maintaining an online management system to determine a Contractor Employee's background screen status (**Active** or **Inactive**).

DISA may modify the Program at any time. Participating Owners and Contractor Employers shall be notified of any modification before implementation.

## 4.0  OVERVIEW OF THE BACKGROUND SCREENING CONSORTIUM PROCESS

An overview of the information flow and significant elements of the Program is provided in Appendix E: Overview of Background Screening Consortium Process.

## 5.0  PROGRAM APPLICATION

Industrial facility Owners will voluntarily decide if their site(s) will participate in the Program. Owners that choose to participate in the Program accept the validity of the background screens developed under the Program.

Participating Owners will determine which contract companies (including subcontractors) will be included in the Program, and establish their own site background screening security requirements (maximum background screen grade).  Participating Owners will communicate their decision to participate in the Program to affected Contractor Employers.

Contractor Employers shall authorize one or more of their employees or agents to interface with DISA on their behalf to obtain background screen consent forms from Contractor Employees, schedule background screens, assist in the Pre-Adverse and Adverse Action process, and monitor Contractor Employee background screen expiration dates.

DISA shall determine its own pricing structure that includes all costs associated with performing background screens under the Program.

It is the responsibility of the Contractor Employer to ensure that a background screen is performed on all Contractor Employees considered for assignment to participating Owner facilities.  A Contractor Employer must not assign a Contractor Employee to an Owner's facility if the individual has an **Inactive** status for that Owner's site.

The Contractor Employer and DISA have full responsibility for compliance with all applicable legal requirements regarding privacy rights related to obtaining background screens under the Program and must comply with all legal requirements that may apply in the jurisdictions in which the Owner facilities are located, the background checks are  performed and the residence of the applicant. To the extent there is any conflict between the requirements described in the Program and applicable laws and regulations, the latter controls.

The Contractor Employer has full responsibility for compliance with all legal requirements regarding authorization to work, visas, work permits or any related documentation in all jurisdictions in which Contractor Employees are assigned to work.

Owners shall not direct or in any manner be involved in hiring decisions Contractor Employers may make regarding a screened Contractor Employee.  The background screen status (**Active** or **Inactive**) shall only be used by the Owner to determine a Contractor Employee's eligibility for access to the Owner's site.  All hiring and assignment decisions are the sole responsibility of the Contractor Employer.  <u>If a Contractor Employer uses background screen information from the Program to determine an individual's employment eligibility, the Contractor Employer must follow all applicable FCRA and state requirements.</u>

Contractor Employers shall hold the Owners harmless regarding any litigation that might arise from any hiring or assignment decision made by the Contractor Employer regarding a background screening report.

If legal requirements and customary practices in non-United States jurisdictions limit the implementation of the Program by a Contractor Employer, the Contractor Employer shall work with the affected Owner to identify reasonable alternatives to accomplish the intent of the Program.  Any alternative methods agreed to by an Owner and Contractor Employer are not a part of the Program unless approved by DISA and incorporated into the Program.

## 6.0    <u>CONSENT FOR BACKGROUND CHECKS AND RELEASE OF INFORMATION</u>

Contractor Employees must consent, in writing, to allow a background screen to be performed by DISA under the Program and allow the release of the information.  A sample of the required consent form is included in Appendix B: DISA Background Screening Consent Form.

## 7.0    <u>BACKGROUND SCREEN REPORTS AND GRADES</u>

If DISA utilizes the services of background screen investigation firms, subcontractors or other third parties to perform background screens for the Program, DISA will verify their qualification and periodically audit their compliance with the Program requirements.

Prior to performing background screens under the Program, DISA will verify that the Contractor Employer requesting background screens has a permissible purpose under the FCRA for obtaining the information.  DISA will obtain appropriate written consent from the Contractor Employee before the background screen is performed.

Background screens shall be performed using the best available commercial and national/ state resources, databases and methods, and the grading criteria identified in Appendix C: Background Screening Search and Grading Criteria.  The list of criminal convictions in Appendix C was specifically designed to identify those persons with the potential to endanger people and assets.

Each background screen completed under the Program shall result in the assignment of a background screen grade for the Contractor Employee as documented in Appendix C.  If a Contractor Employee refuses a background screen under the Program, no background screen will be performed and no grade will be established.

DISA shall be responsible for the delivery of accurate background screen reports performed under the Program and the resulting background screen grade, to the extent the information obtained from the resources identified in Appendix C is correct.

Access to background screen information will be limited as follows:

| | Background Screen Report Details | Background Screen Grade | Background Screen Status (Active or Inactive) for an Owner's Site |
|---|---|---|---|
| Contractor Employer who Ordered the Background Screen<br><br>(Contractor Employer is Participating in Program) | **Yes** | **Yes** | **Yes** |
| Contractor Employers <u>not</u> Participating in the Program | No* | No | No |
| Subject Contractor Employee | **Yes** | **Yes** | No |
| Owners Participating in the Program | No * | No | **Yes** |
| Owners <u>not</u> Participating in the Program | No * | No | No |
| Reciprocal Safety Councils Participating in the Program | No | No | **Yes** |
| Safety Councils <u>not</u> Participating in the Program | No | No | No |

* May be allowed access to background screen report details only with written authorization by the subject Contractor Employee

Contractor Employers have an ongoing duty to advise Contractor Employees to immediately inform the Contractor Employer of any conviction record or other "hits" (as identified in the first paragraph of Appendix "C") arising <u>after</u> the establishment of the Contractor Employee's background screen grade in the Program. If the Contractor Employer becomes aware of any conviction, and the conviction would result in a background screen grade that is excluded by the Owner where the Contractor Employee is currently working, it must inform any affected Owners in writing, order a new background screen on the Contractor Employee and take appropriate actions based on the new background screen grade. A participating Owner may restrict the Contractor Employee's access to its facility while the new background screen is being performed, unless the Owner agrees to continuation of the assignment pending results of the new background screen.

If a conviction has been removed from a Contractor Employee's record <u>after</u> a background screen has been completed under the Program, or if a conviction is no longer within the relevant time frames established in Appendix C, the Contractor Employee may request his/her Contractor Employer to have DISA perform a new background screen to update his/her background screen grade in the Program. The decision to order a new background screen is at the discretion of the Contractor Employer.

## 8.0  ELIGIBILITY FOR ACCESS TO OWNER FACILITIES

Each participating Owner shall determine their background screen security level for the Program. The background screen security level selected by an Owner shall designate the maximum background screen grade that will be allowed for a Contractor Employee to be eligible for access to the Owner's site.  DISAWorks will use this information to determine Contractor Employee status.

When a participating Owner, Contractor Employer or reciprocal Safety Council uses DISAWorks to determine if a Contractor Employee meets an Owner's background screen security requirements, the system will compare the Owner's requirements to the background screen grade provided by DISA and classify the Contractor Employee with either an **Active** or **Inactive** status for that Owner's site.

- Any Contractor Employee who does not have a current background screen grade in the Program or has a background screen grade that has expired will be classified as Inactive for all participating Owner sites;
- Any Contractor Employee who does not meet a particular Owner's background screen security requirements will be classified as Inactive for that Owner's site;
- Any Contractor Employee who meets a particular Owner's background screen security requirements will be classified as Active for that Owner's site.

Owners may deny access to their property to any Contractor Employee whose background screen grade does not meet the Owner's background screen security requirements (**Inactive** status) and to Contractor Employees who refuse to comply with the requirements of the Program.  A Contractor Employee with a background screen grade that meets a participating Owner's background screen security requirements (**Active** status) is eligible for access to a participating Owner's property.  However, any Owner reserves the right to allow or deny access without regard to background screening eligibility.

For example, if an Owner selects a background screen grade of "03" (Lesser Felonies) as its maximum background screen grade, then Contractor Employees with background screen grades of "04" through "07" WOULD NOT meet that Owner's background screen security requirements and therefore would have an **Inactive** status for that Owner's site.  Conversely, Contractor Employees with background screen grades of "00" through "03" WOULD meet that Owner's background screen security requirements and would have an **Active** status  for that Owner's site. (This example is for illustration purposes only and is not intended to reflect any Owner's actual requirements.)

It is the Contractor Employer's responsibility to not assign a Contractor Employee with a background screen grade above an Owner's background screen security level to work at the Owner's site.  Participating Contractor Employers shall not knowingly use the services of any individual on Owner's premises who does not meet the Owner's site background screen security requirements without written approval from the Owner (see  Section 9 "Waivers and Exemptions").

If a Contractor Employee who does not meet an Owner's background screen security requirements arrives at that Owner's site, the Owner will inform the Contractor Employee to contact his/her Contractor Employer for an explanation.

DISA Global Solutions, Inc.

### 9.0  WAIVERS AND EXEMPTIONS

If business needs warrant, a Contractor Employer may petition an Owner for a waiver or exemption for a Contractor Employee who is not active in the Program or did not receive a background screen grade that meets the Owner's security requirements.   The Owner may, at its sole discretion, grant waivers or exemptions to Contractor Employers and/or all or part of its Contractor Employees from the requirements of the Program.  Each Owner shall maintain its own background screen waiver or exemption criteria and process.

Waivers or exemptions shall be executed at the discretion of the Owner on a case-by-case basis and will have no impact on the background screen grade developed DISA.  DISA shall not alter or amend a background screen report or resulting background screen grade developed under the Program based on a waiver or exemption provided by any Owner.

Contractor Employers shall not construe an exemption or waiver as a promise of any future exemptions or waivers.  An Owner may revoke any waiver or exemption granted to a Contractor Employer and/or t its Contractor Employees at any time.

### 10.0  CONFIDENTIALITY

DISA shall maintain the confidentiality of all Contractor Employee background screen results, except as authorized by a Contractor Employee's consent, or as required by law. No background screen report details or grade shall be sent to participating Owners or participating reciprocal Safety Councils.  The Contractor Employee's background screen report and grade shall not be available for public viewing.

### 11.0  TRAINING

Each participating Contractor Employer shall advise all Contractor Employees, in writing, of their rights and responsibilities under the Program.

Designated Employer Representatives (DER's) authorized by the Contractor Employer must receive training from DISA on the Program requirements and DISA's business practices prior to administering any background screens.

### 12.0  PROGRAM AUDIT

DISA must maintain all records related to background screen performed under the Program as long as they are participating in the Program.  Contractor Employers must follow applicable state laws regarding retention of records.

DISA shall ensure appropriate corrective actions are taken in a timely manner on any deficiencies discovered in an audit.

Any Owner participating in the Program may audit a Contractor Employer's records at any time.

# APPENDIX A

## DEFINITIONS OF KEY TERMS

**DISA BACKGROUND SCREENING CONSORTIUM** -- a program established by participating Owners and Owner User Groups and used by participating Owners, Contractor Employers, and Contractor Employees to protect the Owners assets and the people working at the Owner's facilities (herein after referred to as the Program).

**OWNER** -- owner of an industrial facility who utilizes the services of Contractors and chooses to participate in the Program and accepts the Program screen as a valid background screen.

**CONTRACTOR EMPLOYER** -- a Contractor company that assigns Contractor Employees to work at participating Owner facilities.

**CONTRACTOR EMPLOYEE** -- an employee of a participating Contractor Employer who has consented to allow the backgrounds screens provided by the Program as a condition of access to participating Owner facilities.

**PROGRAM CUSTODIAN** – DISA Global Solutions, Inc. is the Program Custodian and is responsible for implementing the Program in accordance with the Program requirements, maintaining an online management system, and auditing the Program to assure compliance and effectiveness.

**PRE-ADVERSE ACTION** -- preliminary notice given to an applicant indicating information contained in his/her background screening report, if accurate, may restrict their eligibility for access to some participating Owner facilities or may cause employment to be denied.

**ADVERSE ACTION** -- final notice, after issuance of Pre-Adverse Action letter, given to applicant notifying them that their eligibility for access to some participating Owner facilities may be restricted, or they are no longer being considered for employment for the position in question.

**DESIGNATED EMPLOYER REPRESENTATIVE (DER)** -- Contractor Employee(s) authorized by the Contractor Employer to interface with DISA on the Contractor Employer's behalf to obtain background screen consent forms from Contractor Employees, schedule background screens, assist in the Pre-Adverse and Adverse Action process, and monitor Contractor Employee background screen expiration dates.

**BACKGROUND SCREEN INVESTIGATORS** -- a firm, subcontractor or other third party qualified and authorized by a DISA to conduct background screens per the criteria set forth by the Program.

DISA Global Solutions, Inc. - ©Copyright 2015 – All Rights Reserved

DISA Global Solutions, Inc.

**APPENDIX B**

**SAMPLE DISA BACKGROUND SCREENING CONSENT FORM**



12706
DISA BG

**DISA Background Screening Consent Form**
**NABSC and Reciprocal Consortiums**
**DISA Contractors Consortium, 12600 Northbourgh Drive STE 300, Houston, TX 77067**

Form Number:    225629

### NOTICE AND ACKNOWLEDGEMENT FOR BACKGROUND INVESTIGATION
IMPORTANT -- PLEASE READ CAREFULLY BEFORE SIGNING ACKNOWLEDGMENT

Your employer may obtain information about you from a consumer reporting agency for employment or other permissible purposes. Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include information about your character, general reputation, personal characteristics, and mode of living. These reports may include employment history and reference checks, motor vehicle history ("driving records"), sex offender status, Social Security Verification/Trace, national criminal database searches, and Terrorist Watch list information. These reports may be obtained at any time after receipt of your authorization and, if you are hired, throughout your employment.

These reports will be reported to the employer of record. Information in these reports may result in restricting your access to some Owner's facilities who are participating in the North American Background Screening Consortium (NABSC) or the DISA Contractor Consortium. **For more information on the NABSC Program, refer to the NABSC program description.**

The information in the consumer report will be used to generate a background screen grade.. Each Owner participating will provide the maximum background screen grade that will be allowed for Contractor Employees to be eligible for access to that Owner's site. Disa, Inc. or the NABSC Program Lookup Application will compare the Owner's requirements to the background screen grade provided by DISA, Inc to classify you with either an Active or Inactive status for that Owner's site

- If you do not meet a particular Owner's background screen security requirements, you will be classified as Inactive for that Owner' site;
- If you meet a particular Owner's background screen security requirements, you will be classified as Active for that Owner's site.

If you have an **Active** status for an Owner's site, you will be eligible for access to that Owner's property. However, any Owner reserves the right to allow or deny access without regard to background screening eligibility.

You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report. Please be advised that the nature and scope of the most common form of investigative consumer report obtained with regard to applicants or employees is an investigation into your employment history conducted by DISA, Inc (12600 Northborough #300, Houston, TX, 77067 (800)752-6432) or another outside organization. The scope of this type of investigation is all-encompassing, however, allowing the employer to obtain from any outside organization all manner of consumer reports and investigative consumer reports now and, throughout the course of your employment with the employer to the extent permitted by law.. As a result, you should carefully consider whether to exercise your right to request disclosure of the nature and scope of any investigative consumer report. Owners, Contractor Employers and reciprocal Safety Councils participating in the NABSC Program and DCC will have access to verify your background screen security status (**Active** or **Inactive**) for a particular Owner's site. **Participating Owners and reciprocal Safety Councils will not have access to the details of the background report without additional authorization by you.**

### ACKNOWLEDGMENT AND AUTHORIZATION
I acknowledge receipt of the A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and certify that I have read and understand both of those documents. I hereby authorize the obtaining of "consumer reports" and/or "investigative consumer reports" at any time after receipt of this authorization and, for a period of two years from the conclusion of the background screen. I further authorize and direct DISA to make available my subsequent background screen grade to the NABSC Program Lookup Application or any other Owner participating in a DISA Background Screening Consortium for the purpose of determining my eligibility to access to Owner's facilities. To these ends, I hereby authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau, employer, insurance company, or any other source to furnish any and all background information requested by DISA, another outside organization acting on behalf of DISA, the NABSC Program Custodian, and/or the employer itself. I agree that a facsimile ("fax"), electronic or photographic copy of this Authorization shall be as valid as the original.

**Please Note: This form does not place a background order.**

| | |
|---|---|
| **Applicant Name:** Renia Taylor | **Applicant SSN:** 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 |
| **Witness:** | **Location:** (LMJ Companies) DISA BG |

| | |
|---|---|
| **Signature:** | **Date:** |
| **Witness:** | **Date:** |

Return to forms@disa.com        www.disa.com        (Fax) 713-972-3431

DISA Global Solutions, Inc. - ©Copyright 2015 – All Rights Reserved

**APPENDIX C**

**BACKGROUND SCREENING SEARCH AND GRADING CRITERIA**

Owner requirements may vary regarding products, background screen frequency, and jurisdictions. To obtain specific search criteria, Contractor Employer should confirm with Owner and/or DISA.

The background screen for Contractor Employees may include a criminal record check of federal, state and county/parish (or equivalent) records, as allowed by law, for both misdemeanors and felonies where the disposition is a:

- Conviction
- Pending or adjudication withheld
- Deferred adjudication
- No contest plea or any other disposition (such as probation) where an individual must complete some criteria before a final disposition is determined
- Open warrant

Individual owner requirements will determine the number of years and jurisdictions reviewed. Jurisdictions that may be required include:  where the individual has lived and worked based upon the disposition date and any jurisdictions found while searching national/state databases and other sources.

Background screens shall be performed using the best available commercial and national/state resources, databases and methods. DISA must perform due diligence to verify the Contractor Employee's identity (using available key identifiers such as name, SSN, date of birth, etc.) associated with any criminal history discovered during the background screening process before reporting a background screen grade for the Program.

A new background screen must be ordered by the current Contractor Employer prior to the expiration of the background screen.  Background screen frequency shall be determined by individual Owner requirements.

Each background screen search may include the following products:

1. **COLLECTION OF INFORMATION FROM CONTRACTOR EMPLOYEES REGARDINGPLACES OF RESIDENCE AND EMPLOYMENT**

   DISA shall obtain employment and residence data from the Contractor Employee's background screen application for the number of years specified by Owner.  DISA shall verify relevant places of residence from the Contractor Employee's background screening application, and the Social Security Number Trace and Motor Vehicle History.  All three may be used in conjunction to determine past resident history.  In the case of military personnel who have served overseas, the military person's U.S. permanent duty station(s) shall be used.

   An Owner has the option to designate that certain Contractor Employers will need to adhere to more stringent background check requirements when performing "Security Sensitive Services." For those designated Contractor Employers, the following shall apply: DISA shall verify and identify relevant places of residence and employment from the Contractor Employee's

background screen application, and the Social Security Number Trace and Motor Vehicle History (if available). All three may be used in conjunction to determine past employment and resident history. In the case of military personnel who have served overseas, the military person's U.S. permanent duty station(s) shall be used.

2. **SOCIAL SECURITY NUMBER (SSN) TRACE**

Prior to initiating any criminal background check, a Social Security Number (SSN) trace shall be made by DISA to confirm the Contractor Employee's identity (using available key identifiers such as legal name, maiden name, AKA name and SSN) and to determine relevant places of residence for the period of time specified by the Owner.

The SSN trace report is derived from credit bureau records. The sources include, but are not limited to, applications for utilities, credit checks for loans and credit cards, and qualification for rental agreements. DISA shall include within its search the above listed data along with capabilities to search AKA/Maiden Names, alerts for fraudulent patterns relating to the SSN, and verify the SSN is valid in accordance with time and date of issuance.

If the SSN cannot be verified, DISA shall notify the Contractor Employer who ordered the background screen to assist in resolving the issue.  If the SSN still cannot be verified, the background screening process stops and no background screen grade shall be reported.

3. **DEPARTMENT OF MOTOR VEHICLE RECORDS/STATE IDENTIFICATION SEARCH**

If a valid SSN verification is made, then a check of the State Department of Motor Vehicle Records (DMV) shall be made to check for a valid state identification and to examine the Contractor Employee's driving record.  If available, the driving record is used to corroborate address information, and obtain certain criminal convictions.  If DISA is unable to verify state identification, a Pre-Adverse Action Letter shall be issued to the Contractor Employee and Contractor Employer.  The background screening process stops until resolution of the state identification issue.  If the state identification issue is not resolved, the Consortium TPA shall notify the Contractor Employer and no background screen grade shall be reported.

4. **CRIMINAL HISTORY SEARCH (COUNTY or PARISH LEVEL / STATE LEVEL / FEDERAL DISTRICT LEVEL**)

DISA may complete a Criminal History Search in all counties, states (if available), and federal jurisdictions derived from the resident history and any employment jurisdiction given by the Contractor Employee as allowable by law. DISA shall utilize field investigators, and/or the most up-to-date data source available to provide a complete background screen that is current in accordance with the FCRA and state law.

5. **NATIONAL CRIMINAL DATABASE SEARCH**

The National Criminal Database Search is a supplemental search to capture possible records that may exist within current states of residence, or records that are existent in jurisdictions outside current states of residence. Records should derive from not only county and state repositories, but shall also include a search of records readily available from each state's:

DISA Global Solutions, Inc. - ©Copyright 2015 – All Rights Reserved

- Administration Office of the Courts
- Department of Corrections
- Prison Release Data (State and Federal)
- Office of Parole Boards
- Sex Offender Registries

6. **PATRIOT ACT / TERRORIST WATCH LIST SEARCH**

This search covers information from numerous publicly available federal agencies. These agencies compile the names of persons who are wanted by federal law enforcement, barred from the United States, illegal immigrants, specially designated nationals, terrorists, narcotics traffickers, blocked persons, etc. by checking the following sources:

- Denied Persons List
- Fugitive List
- Office of Foreign Assets Control (OFAC)
- Terrorist Watch List

**RELEVANCE OF CRIMINAL DISPOSITIONS**

All criminal dispositions discovered during the background screening process, based upon the disposition date, shall be considered relevant for DISA to develop and report the background screen grade under the Program, unless prohibited by law.

In addition, any criminal dispositions related to a prison release date that occurred within the time period in which the search is conducted shall be considered relevant for developing and reporting the background screen grade, as allowed by law, **without regard to the criminal conviction disposition date**. For example, if a criminal conviction with a disposition date outside of the time period in which the search is conducted resulted in a prison sentence, the conviction would still be relevant for developing a background screen grade under the Program if the prison release date was within the search timeframe.

**BACKGROUND SCREEN GRADE DESIGNATION**

For each background screen completed under the Program, DISA shall identify the type(s) of convictions or other "hits" (as identified in the first paragraph of Appendix "C") found during the relevant time frame and designate a background screen grade related to these "hits". The background screen grade shall indicate that conviction(s) or "hit(s)" **were not found (grade 00)** or **were found (grades 01 through 07)** as defined below.

A background screen may find "hits" in more than one grade level. The highest background screen grade defined shall be the designated grade. For example, if a **lesser felony (03) and a higher felony (05)** were both found, the grade would be **05**. In another case, if a **violent misdemeanor (02) and a higher felony (05)** were both found, the grade for the screen would be **06** because that is the grade if both of these conviction types are found in the same background screen.

**Initial background screen grades of 01 through 07** shall be considered "provisional". See "**Pre-Adverse and Adverse Action Communications and Provisional Background Screen Grades**" paragraph below.

## Background Screen Grade Definitions

| 00 | Clear Record, nothing found. |
|---|---|
| 01 | One or more **"non-violent misdemeanors"** were found.  This includes any misdemeanor not shown on the list of violent misdemeanors (02) below with the exception of minor traffic violations.  This exception does not apply to driving while intoxicated or driving under the influence violations. |
| 02 | One or more **"violent misdemeanors"** were found.  These misdemeanors are any  type shown on the list below. |
| 03 | One or more **"lesser felonies"** were found.  This includes any felony not shown on the list of higher felonies (05) below. |
| 04 | One or more **"violent misdemeanors"** and one or more **"lesser felonies"** were found. |
| 05 | One or more **"higher felonies"** were found.  These felonies are any  type shown on the list below. |
| 06 | One or more **"higher felonies"** and one or more **"violent misdemeanors"** were found. |
| 07 | The person was found to be on the current **Patriot Act List** (specially designated nationals, terrorists, narcotics traffickers, blocked persons, etc.). |

## Violent Misdemeanor Crimes (02)

The following list *represents a selected list of misdemeanor types* to be used for the purposes of assigning a numeric "graded" value.

- Assault
- Battery
- Bodily Injury
- Cruelty to a Juvenile
- Deadly Conduct
- Disorderly Conduct
- Disorderly Person
- Escape
- Harassment
- Resisting arrest
- Resisting Public Officer
- Robbery
- Terrorist Threats
- Throwing a deadly missile
- Violation of restraining order
- Weapon

## Higher Felony Crimes (05)

The following list *represents a selected list of felony types* to be used for the purposes of assigning a numeric "graded" value.

- Transportation security incident (i.e. Security incident involving a significant loss of life, environmental damage, transportation system disruption, or economic disruption
- Aiding others in terrorism
- Aircraft piracy outside the special aircraft jurisdiction of the United States, 49 U.S.C. 46502*
- Arson
- Assault (including aggravated and or sexual)
- Battery
- Bribery
- Burglary (breaking and entering)
- Carjacking
- Carrying a weapon or explosive aboard aircraft, 49 U.S.C. 46505*
- Commission of certain crimes aboard aircraft in flight, 49 U.S.C. 46506*
- Computer crimes (hacking, fraud, damage to property)
- Conveying false information and threats, 49. U.S.C. 46507*
- Credit card fraud
- Criminal anarchy
- Denied or removed under the Immigration And Nationality Act (8 U.S.C. 1182 Et Seq)*
- Kidnapping
- Lighting violations involving transporting controlled substances, 49 U.S.C. 46315*

- Misprision of treason
- Monetary instrument abuse
- Perjury and false swearing
- Purse snatching
- Racketeering and RICO violations
- Rape
- Robbery
- Sedition
- Sex crimes
- Smuggling
- Tax evasion
- Destruction of an aircraft or aircraft facility, 18 U.S.C. 32*
- Drug offenses
- Embezzlement
- Espionage
- Explosive offenses (devices, fake explosive devices, incendiary devices, dangerous articles, importation, manufacture, distribution, storage)
- Extortion
- False imprisonment - armed or hostage taking
- False personating (peace office, public official)
- Forgery and counterfeiting
- Fraud (including dishonesty and misrepresentation)

- Homicide / murder / manslaughter / including solicitation to murder (excluding negligent manslaughter)
- Identity theft
- Immigration violations
- Improper transportation of a hazardous material, 49 U.S.C. 46312*
- Interference with air navigation, 49 U.S.C. 46308*
- Interference with flight crew members or flight attendants, 49 U.S.C. 46504*
- Terrorism
- Theft-larceny (including felony shoplifting)
- Treason
- Unlawful entry into an aircraft or airport area that serves air carriers or foreign air carriers contrary to established security requirements, 49 U.S.C.46314*
- Weapons (any offense-carrying a concealed weapon, weapon on premises, illegal use, manufacture, store, sell, distribute, discharge, etc.)
- Traffic offenses i.e., traffic homicide, hit and run (excluding DWI/DUI convictions)

*United States Code is offered as a reference to the nature of the crime.  Similar state laws are also considered disqualifying.

## PRE-ADVERSE AND ADVERSE ACTION COMMUNICATIONS AND PROVISIONAL BACKGROUND SCREEN GRADES

Any initial background screen grade between "01" and "07" (any grade other than "00") shall initially be identified as a "provisional" grade.  (The provisional grade is considered a valid background screen grade in the Program and can be used by the Contractor Employer for placement of Contractor Employees at participating Owner sites that accept the assigned background screen grade.  Completion of the Pre-Adverse Action process may result in a final background screen grade that is lower than the provisional background screen grade.)

When a provisional background screen grade is identified, DISA shall issue a Pre-Adverse Action Letter to the Contractor Employee and Contractor Employer who ordered the background screen, along with a copy of the background screen report and grade, and a copy of the Consumer Notification Rights, informing the individual of their right to dispute the background screen report and notifying the individual that the provisional background screen grade may restrict their eligibility for access to some participating Owner facilities.

If the Contractor Employee does not dispute the results of the background screen search within five (5) business days after receipt of the results, DISA shall remove the provisional status from the background screen grade.  This grade shall be considered the final background screen grade.

If the Contractor Employee finds a discrepancy in the initial background screen report, he/she shall inform DISA for dispute resolution.  Disputes of criminal history findings shall be reinvestigated by DISA according to all applicable laws.  Resolution of disputes must be completed within thirty (30) calendar days.  After this time, DISA shall remove the provisional status from the background screen grade.  This grade shall be considered the final background screen grade.

DISA shall investigate and modify the provisional background screen report and grade if new information is discovered that warrants the change.  If the initial background screen grade was accurate, DISA shall remove the provisional status from the background screen grade.  If the final background screen grade is different than the initial provisional background screen grade, DISA shall revise the initial provisional background screen grade.  If modified, DISA shall also send a copy of the background screen report and resulting grade to the Contractor Employee and the Contractor Employer who ordered the background screen <u>along with another Pre-Adverse Action letter.</u>

If the final background screen grade is between "01" and  "07" (any grade other than "00"), the Consortium TPA shall issue an Adverse Action Letter to the Contractor Employee indicating the background screen grade may restrict their eligibility for access to some participating Owner facilities.

All Pre-Adverse and Adverse Actions and any communications with the Contractor Employee are the responsibility of the Contractor Employer and DISA.  The Contractor Employer and DISA shall further assume full responsibility for complying with all local, state and federal laws related to Pre-Adverse and Adverse Action requirements on behalf of itself and any obligations participating Owner facilities may have.

# Exhibit 3



**Pre-Adverse Action Letter (Consortium)**

Date: 01/08/2020



Dear ████████

Based on your consent, a background screen was conducted on you by a consumer reporting agency for determining your eligibility for access to Owner facilities participating in the North American Background Screening Consortium (NABSC) or other owner programs.

Information contained in the background screen report, a copy which is being given to you, from **DISA Global Solutions Inc.**, **10900 Corporate Centre Drive, Ste. 250, Houston TX 77041, 800-752-6432** (a consumer reporting agency), *may* restrict you from being assigned to certain Owner's facilities. **DISA Global Solutions, Inc.,** has not made any decision as to whether you will or will not be assigned to certain Owner facilities, and cannot explain to you any decision to prohibit you from assignment to an Owner facility.

**DISA Global Solutions, Inc.**, is enclosing a copy of the report and a copy of your rights under the federal Fair Credit Reporting Act. You have the right to obtain a free copy of your file from **DISA Global Solutions, Inc.**, if you request the report within 60 days. **You also have the right to dispute with the DISA Global Solutions, Inc., the accuracy or completeness of any information in the report.**

**If you believe the information listed above is not accurate, please contact our Dispute Line at (800) 752-6432 within FIVE(5) business days of receipt of this letter.**

Sincerely,

Backgrounds Screening Department
DISA Global Solutions, Inc.

Enclosure:    Consumer Report
              A Summary of Rights under the FCRA

**Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

**A Summary of Your Rights Under the Fair Credit Reporting Act**

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

• **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

• **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
•       a person has taken adverse action against you because of information in your credit report;
•       you are the victim of identity theft and place a fraud alert in your file;
•       your file contains inaccurate information as a result of fraud;
•       you are on public assistance;
•       you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

• **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

• **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

• **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

• **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

• **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

• **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

• **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

• The following FCRA right applies with respect to nationwide consumer reporting agencies:

**CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE**

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit

file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

• **You may seek damages from violators.** If a consumer reporting agency or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

• **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates. | a. Consumer Financial Protection Bureau 1700 G Street NW Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | b. Federal Trade Commission Consumer Response Center 600 Pennsylvania Avenue, N.W. Washington, DC 20580 (877) 382-4357 |
| 2. To the extent not included in item 1 above: | a. Office of the Comptroller of the Currency Customer Assistance Group 1301 McKinney Street, Suite 3450 Houston, TX 77010-9050 |
| a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | b. Federal Reserve Consumer Help Center P.O. Box 1200 Minneapolis, MN 55480 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | c. FDIC Consumer Response Center 1100 Walnut Street, Box #11 Kansas City, MO 64106 |
| d. Federal Credit Unions | d. National Credit Union Administration Office of Consumer Protection (OCFP) Division of Consumer Compliance and Outreach 1775 Duke Street Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings Aviation Consumer Protection Division Department of Transportation 1200 New Jersey Avenue, S.E. Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board Department of Transportation 395 E Street S.W. Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access United States Small Business Administration 409 Third Street, S.W., Suite 8200 Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission 100 F Street, N.E. Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration 1501 Farm Credit Drive McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission Consumer Response Center 600 Pennsylvania Avenue, N.W. Washington, DC 20580 (877) 382-4357 |

# Exhibit 4



# Adverse Action Letter (Consortium)

### Final Notice of Adverse Action Letter

Date: 01/21/2020



Dear ██████████

Please be advised that it is possible your eligibility to access to any Owner's facility currently participating in the North American Background Screening Consortium (NABSC) or other owner programs have been restricted.

The decision was based in whole or in part on information contained in a report from **DISA Global Solutions Inc., 10900 Corporate Centre Drive, Ste. 250, Houston TX 77041, 800-752-6432** (a consumer reporting agency), a copy of which was previously given to you. **DISA Global Solutions Inc.,** has not made any decision as to whether you will or will not be assigned to certain Owner facilities, and cannot explain to you any decision to prohibit you from assignment to an Owner facility.

You have the right to obtain a free copy of your file from the consumer reporting agency if you make a request with the agency within 60 days.  Enclosed with our letter to you dated **01/14/2020**, you were provided with a copy of the background screen report from **DISA Global Solutions Inc.** You also have the right to obtain from the consumer reporting agency, free of cost, an additional copy of the report.

You also must be provided with a copy of the Federal Trade Commission's summary of Consumer Rights, which is attached to this letter.  The summary was also included with our letter to you dated **01/14/2020.**

You have the right to dispute directly with the consumer reporting agency the accuracy or completeness of any information provided by the consumer reporting agency.


Sincerely,

Backgrounds Screening Department
DISA Global Solutions, Inc.

Enclosure:    A Summary of Rights under the FCRA

**Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

## A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

• **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

• **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
•       a person has taken adverse action against you because of information in your credit report;
•       you are the victim of identity theft and place a fraud alert in your file;
•       your file contains inaccurate information as a result of fraud;
•       you are on public assistance;
•       you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

• **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

• **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

• **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

• **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

• **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

• **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

• **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

• The following FCRA right applies with respect to nationwide consumer reporting agencies:

## CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit

file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

• **You may seek damages from violators.** If a consumer reporting agency or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

• **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates. | a. Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | b. Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above: | a. Office of the Comptroller of the Currency<br>Customer Assistance Group |
| a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | 1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106 |
| d. Federal Credit Unions | d. National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street S.W.<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards<br>Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, S.W., Suite 8200<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street, N.E.<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br>(877) 382-4357 |