Christian Schreiber (SBN 245597)
christian@os-legal.com
Monique Olivier (SBN 190385)
monique@os-legal.com
OLIVIER & SCHREIBER PC
475 14th Street, Suite 250
Oakland, CA 94612
Tel: (415) 484-0980
Fax: (415) 658-7758

Stacy Villalobos (SBN 306710)
svillalobos@legalaidatwork.org
Molly Kim Lao (SBN 339621)
mlao@legalaidatwork.org
LEGAL AID AT WORK
180 Montgomery Street, Ste. 600
San Francisco, CA 94104-4244
Tel: (415) 864-8848

*Attorneys for Plaintiff JANE ROE*

*[Additional Counsel listed on Signature Page]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE,<br><br>  Plaintiff,<br><br>  v.<br><br>DISA GLOBAL SOLUTIONS, INC;<br>JCL SAFETY SERVICES; AIR<br>PRODUCTS AND CHEMICALS, INC;<br>PHILLIPS 66; NORTH AMERICAN<br>BACKGROUND SCREENING<br>CONSORTIUM; HEALTH AND<br>SAFETY COUNCIL; and DOES 1-10,<br>inclusive,<br><br>  Defendants. | Case No. 2:24-cv-08380-MCS-PVC<br><br>*Assigned to Judge Mark C. Scarsi;<br>Referred to Magistrate Judge Pedro V.<br>Castillo*<br><br>**PLAINTIFF'S OPPOSITION TO<br>DEFENDANT AIR PRODUCTS AND<br>CHEMICALS, INC.'S RENEWED<br>MOTION TO DISMISS**<br><br>Date:   December 9, 2024<br>Time:  9:00 a.m.<br>Courtroom: 7C |

1

2

TABLE OF CONTENTS

3

INTRODUCTION..................................................................................................1

4

5

FACTS PLED IN THE COMPLAINT ................................................................2

6

ARGUMENT ......................................................................................................4

7

I.    LEGAL STANDARD ................................................................................4

8

   A.  Federal Rule of Civil Procedure 12(b)(6) ..........................................4

9

10

II.   PLAINTIFF HAS ADEQUATELY ALLEGED CLAIMS FOR
      VIOLATIONS OF THE FAIR CHANCE ACT AND FEHA .........................5

11

12

   A.  The Plausibility Pleading Standard Only Requires Plaintiff to Allege Facts
       that Raise a Claim "Above the Speculative Level" ...............................5

13

14

   B.  Plaintiff Alleges Facts That Plausibly Show Air Products Is an "Employer"
       Under California Law ..................................................................9

15

   C.  Defendant's Motion Is Silent as to Air Products' Potential Liability as a
       Joint Employer ........................................................................13

16

17

   D.  Plaintiff Alleges Facts That Plausibly Show Air Products Is Liable as a
       Third-Party Interferer ...............................................................15

18

19

III.  PLAINTIFF'S AIDING AND ABETTING CLAIM IS SUFFICIENTLY
      ALLEGED .............................................................................17

20

21

IV.   IF THE COURT DETERMINES THAT A CLAIM IS NOT ADEQUATELY
      PLED, IT SHOULD GRANT LEAVE TO AMEND......................................20

22

23

CONCLUSION ................................................................................20

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

3                                                                          **Page(s)**

**Federal Cases**

4

5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................... 9, 12, 13

6

7

*Association of Mexican-American Educators v. California,*
   231 F.3d 572 (9th Cir. 2000) ................................................................ 20

8

9

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................... 9, 12

10

*Blake v. City of Los Angeles,*
   595 F.2d 1367 (9th Cir. 1979) .............................................................. 22

11

12

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) .............................................................. 24

13

14

*Butler v. Drive Automotive Industries of America, Inc.,*
   793 F.3d 404 (4th Cir. 2015) ............................................................... 19

15

16

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ................................................................ 8

17

18

*Canterberry v. Acara Solutions, Inc.,*
   No. 20-CV-02361-KJM-KJN, 2022 WL 317002
   (E.D. Cal. Feb. 2, 2022) .................................................................. 14, 15

19

20

*Cook v. Brewer,*
   637 F.3d 1002 (9th Cir. 2011) ................................................................ 8

21

22

*Coppola v. Smith,*
   982 F. Supp. 2d 1133 (E.D. Cal. 2013) .................................................. 9

23

24

*Covington v. International Ass'n of Approved Basketball Officials,*
   710 F.3d 114 (3d Cir. 2013) ................................................................. 19

25

26

*Faush v. Tuesday Morning, Inc.,*
   808 F.3d 208 (3d Cir. 2015) ................................................................. 19

27

28

*Gibson-Jones v. Berkel & Co. Contractors*,
    No. C07-6440 WDB, 2008 WL 782568
    (N.D. Cal. Mar. 21, 2008) ................................................................... 23

*Gomez v. Alexian Bros. Hosp. of San Jose*,
    698 F. 2d 1019 (9th Cir. 1983) ............................................................ 20

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014) (per curiam) ..................................................... 9, 17

*Lutcher v. Musicians Union Local 47*,
    633 F.2d 880 (9th Cir. 1980) ................................................................ 20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ................................................................ 8

*Mie Yang v. Francesca's Collections, Inc.*,
    No. 17-CV-04950-HSG, 2018 WL 984637
    (N.D. Cal. Feb. 20, 2018) .................................................................... 24

*Mobley v. Workday, Inc.*,
    No. 23-CV-00770-RFL, 2024 WL 3409146
    (N.D. Cal. July 12, 2024) .................................................................... 16

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ............................................................................... 9

*Pac. Bell Tel. Co. v. 88 Connection Corp.*,
    No. 15-CV-04554-LB, 2016 WL 3257656
    (N.D. Cal. June 14, 2016) ................................................................... 10

*Pao v. Holy Redeemer Hosp.*,
    547 F. Supp. 484 (E.D. Pa. 1982) ....................................................... 21

*Raines v. U.S. Healthworks Med. Grp.*,
    No. 19-CV-1539-DMS-DEB, 2024 WL 3850812
    (S.D. Cal. Aug. 16, 2024)........................................................ 14, 17, 20

*Scilex Pharms. Inc. v. Sanofi- Aventis U.S. LLC*,
    552 F. Supp. 3d 901 (N.D. Cal. 2021) .................................................. 8

*Sheppard v. David Evans and Assoc.*,
    694 F.3d 1045 (9th Cir. 2012).............................................................. 9

*Sibley Mem'l Hosp. v. Wilson*,
    488 F.2d 1338 (D.C. Cir. 1973) .................................................................... 21

*Sollberger v. Wachovia Sec., LLC*,
    No. SACV 09-0766AGANX, 2010 WL 2674456
    (C.D. Cal. June 30, 2010).......................................................................... 10

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011)....................................................................... 9

*Torres v. Air to Ground Servs., Inc.*,
    300 F.R.D. 386 (C.D. Cal. 2014) ............................................................... 18

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008)......................................................................... 8

*Wilson v. Timec Servs. Co., Inc.*,
    No. 223CV00172WBSKJN, 2023 WL 3436900
    (E.D. Cal. May 12, 2023).......................................................................... 20

**California Cases**

*Alch v. Superior Court*,
    122 Cal. App. 4th 339 (2004)................................................................ 22, 23

*Dynamex Operations W. v. Superior Court*,
    4 Cal. 5th 903, 952 (2018) ........................................................................ 18

*Jimenez v. U.S. Cont'l Mktg., Inc.*,
    41 Cal. App. 5th 189, 196–97 (2019).......................................................... 17

*Martinez v. Combs*,
    49 Cal. 4th 35 (2010) .......................................................................... 18, 19

*Raines v. U.S. Healthworks Med. Grp.*,
    15 Cal. 5th 268 (2023) ....................................................................*passim*

**Federal Statutes**

Title VII of the Federal Civil Rights Act
    of 1964, 42 U.S.C. § 2000e, *et seq.*..................................... 19, 20, 21, 22

**California Statutes and Regulations**

Cal. Code Regs.
    § 11017.1(d)(4) ................................................................................. 17
    § 11017.1(h) ..................................................................................... 13
    § 11017.1(j)(1) .................................................................................. 15
    § 11017.1(j)(2) .................................................................................. 18

Cal. Gov't Code
    § 12926(d) ....................................................................................... 13
    § 12940(i) ......................................................................................... 22
    §§ 12940-12954 ............................................................................... 13
    § 12940, *et seq*. ................................................................................ 5

Fair Chance Act, Cal. Gov't Code
    § 12952 ...................................................................................*passim*

Investigative Consumer Reporting Agencies Act, Cal. Civ. Code
    § 1786, *et seq*. .................................................................................. 6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................ 8, 9

**INTRODUCTION**

The motion to dismiss fails because it does not contend with the Complaint's ample factual allegations—and even documentary evidence—that show that Defendant Air Products and Chemicals, Inc. ("Air Products") is liable for violations of California law, including the Fair Chance Act ("Fair Chance Act"), Cal. Gov't Code § 12952, and the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, *et seq*.

This action arises from Plaintiff's denial of employment in the oil refinery industry, due to Defendants' racially discriminatory and illegal background screening policies. Plaintiff was adjudicated as ineligible for employment based solely on a decades-old conviction, despite having worked successfully in the industry. Defendant now moves to dismiss Plaintiff's Complaint on a host of spurious grounds. Plaintiff's verified Complaint avers detailed facts—and even attaches corroborating documents—showing that Air Products, as an Owner and participant in the Consortium that propagated the background screening policies, exercised significant and at times *sole* control over Plaintiff's employment. Air Products designated a maximum background screen score (from 00-07)[1] that Plaintiff could be assigned to access a job at its site (which resulted in Plaintiff being denied the job) and declined to waive the requirement for Plaintiff. Plaintiff has detailed four separate legal theories, and provided documents to support those theories, in addition to the ample allegations about Air Products' actions. This far

---

[1]    The background screening policies at issue set forth a scale for background screen scores of 00-07.  Complaint ¶¶ 40-41. A "grade" of "00" purports to designate a clear record, while "01" through "06" purport to be scores based on prior criminal conviction history; "07" is for persons whose names appear on the terrorist watch list. *Id.* at ¶ 42. The scale purports to group convictions into non-violent and violent misdemeanors or felonies. *Id.* at ¶ 43. An Owner selects a "maximum background screen" score to determine eligibility for employment. *Id.*  at ¶ 48.  If an applicant is assigned a score that exceeds the maximum allowable score, they are deemed ineligible to work at the Owner's facility. *Id.*

surpasses what is required at the pleading stage and satisfies her obligations to allege plausible facts that Air Products is an employer and joint employer, a third-party interferer, and an aider and abettor of FEHA violations.

Defendant's Motion to Dismiss ("MTD") should be denied in its entirety.

## FACTS PLED IN THE COMPLAINT

Around November and December 2019, Plaintiff applied for and was conditionally offered a job as a Safety Attendant with JCL Safety Services ("JCL"), working at Air Products' site. Dkt. No. 1-1, Verified Complaint for Damages and Declaratory and Injunctive Relief for Employment Discrimination ("Complaint") ¶¶ 83, 86, 88. The offer was contingent on a background check. *Id.* at ¶ 88. This background check screening was conducted pursuant to policies established by two largely identical programs, the North American Background Screening Consortium policy ("NABSC Policy") and the DISA Background Screening Consortium Background Screening Policy ("DISA Policy"). *Id.* at ¶ 39; *id.*, Exh. 1; *id.*, Exh. 2. Under these policies, each prospective employee is given a background screen score between 00 and 07, based solely on an evaluation of their criminal conviction history. *Id.* at ¶¶ 39-44; *id.*, Exh. 1; *id.*, Exh. 2. Plaintiff was assigned a background screen score of "05" based on a felony conviction from over 30 years ago. *Id.* at ¶¶ 129, 131. As a result, she was denied employment with JCL at Air Products' site, as well as deemed "inactive." *Id.* at ¶ 80. Plaintiff's "inactive" status is shared with multiple employers and facility owners, including Air Products, through two databases, disqualifying her from other employment opportunities. *See id.* at ¶ 80. Plaintiff alleges she was subjected to numerous violations of the Fair Chance Act, FEHA, and the Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786, *et seq.* based on this denial and background screening policies. *See id.* at ¶¶ 120-219. The policies effectively bar any job applicants with felonies from obtaining employment, because the policies foreclose an individualized assessment that considers, among other legally required factors, the time that has

1    passed since the conviction. *See id.* at ¶¶ 126-127; *id.*, Exh. 1; *id.*, Exh. 2.

2         Plaintiff alleges that six entities were involved in the operation of the

3    background screening policies and practices. *See* Complaint ¶¶ 38-39, 45-51. Each is

4    a member of the consortiums that use and enforce the NABSC Policy and DISA

5    Policy. *See id.* at ¶ 45.

6         Plaintiff alleges specific facts about Air Products. First, Air Products is an

7    "Owner" under both DISA's and NABSC's policies. *See* Complaint ¶ 45(i); *id.*, Exh.

8    1, NABSC Policy at 8-9 (App. A); *id.*, Exh. 2, DISA Policy at 7 (App. A). An

9    "Owner," as defined by the policies, owns an industrial facility that participates in

10   the programs and accepts the programs' background screen as valid. *See id.* Owners,

11   including Air Products, set a maximum background screen score for potential

12   employees on a 00-07 scale. *See id.* at ¶¶ 48-49, 51; *id.,* Exh. 1, NABSC Policy at 10

13   (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B).  If the job applicant is assigned a

14   score that exceeds the maximum score selected by the Owner, that applicant is (a)

15   denied hire and ineligible to work at the Owner's facility; and (b) assigned an

16   "inactive" status. *Id.*  An Owner has the discretion to grant an exemption or waiver

17   to applicants who do not receive a background screen score that meets the Owner's

18   requirements. *See id.* at ¶ 70; *id.,* Exh. 1, NABSC Policy at 6; *id.*, Exh. 2, DISA

19   Policy at 6.  As part of the exemption or waiver process, an Owner may access the

20   employee's background screen report. *Id.* Plaintiff alleged that as a result of being

21   graded as "05" and placed into an "inactive" status, she was denied employment by

22   JCL, denied assignment to any Air Products' site, and denied the opportunity to work

23   with other members of the consortiums.  *Id.* at ¶ 83. Had her offer of employment

24   been consummated, Plaintiff would have been the direct employee of JCL and

25   assigned to Air Products' facility.  *Id.* at ¶ 65.  During the assignment, she would

26   have "remain[ed] the direct employee of the Contractor Employer [JCL] but []

27   directed, supervised, and otherwise controlled by the Owner [Air Products] while on

28   its premises." *Id.*

1
2
3
4
5
6

Plaintiff's verified Complaint includes four exhibits: (1) the NABSC Background Screening Policy; (2) the DISA Background Screening Consortium Background Screening Policy; (3) the Pre-Adverse Action Letter (Consortium) dated January 8, 2020 from the preliminary denial for the JCL/Air Products job; and, (4) the Adverse Action Letter (Consortium) dated January 21, 2020 from the final denial for the JCL/Air Products job. Complaint, Exhs. 1-4.

7

ARGUMENT

8
9

## I.    LEGAL STANDARD

10

### A.    Federal Rule of Civil Procedure 12(b)(6)

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

In ruling on a Rule 12(b)(6) motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quotations and citation omitted). Additionally, "[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). If "the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief," the motion for dismissal must be denied. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 909-10 (N.D. Cal. 2021) (quotations and citation omitted).

28

## II.    PLAINTIFF HAS ADEQUATELY ALLEGED CLAIMS FOR VIOLATIONS OF THE FAIR CHANCE ACT AND FEHA

### A.    The Plausibility Pleading Standard Only Requires Plaintiff to Allege Facts that Raise a Claim "Above the Speculative Level"

A plaintiff's complaint "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). Claims should not be dismissed because of an "imperfect statement of the legal theory supporting the claim asserted," *id.* at 11; indeed, "it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Id.* at 12 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1219, p. 277-78 (3d ed. 2004)).

When assessing whether the complaint sets forth a plausible claim for relief, courts must accept as true "allegations of underlying facts" within the complaint. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"). Courts may also consider documents attached to the complaint. *See, e.g.*, *Coppola v. Smith*, 982 F. Supp. 2d 1133, 1136 (E.D. Cal. 2013).

From the underlying facts alleged, the Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged need not by themselves be sufficient to prove liability, each element of a claim, or even demonstrate a probability of liability. *Id.*; *cf. Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012) (noting that an age discrimination plaintiff is not required to plead a prima facie case of discrimination to survive a motion to dismiss). The factual allegations need only "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[N]otice pleading does not require a plaintiff to prove its whole case in advance[,

t]hough that is the direction in which defendants' argument often tends." *Pac. Bell Tel. Co. v. 88 Connection Corp.*, No. 15-CV-04554-LB, 2016 WL 3257656, at *7 (N.D. Cal. June 14, 2016).

Plaintiff has alleged sufficient facts to establish that Air Products is liable for the violations alleged.[2]  Defendant argues that Plaintiff failed to plead with sufficient specificity any wrongful actions by Air Products, relying instead on conclusory allegations and "shotgun pleadings." *See* MTD at 14-15. This is wrong because the Complaint alleges that Air Products:

- Denied Plaintiff employment at its site when Plaintiff applied to a job through JCL for joint employment by JCL and Air Products. *See* Complaint ¶¶ 48-49, 51, 70, 129; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B); *id.*, Exh. 4, Adverse Action Letter (Consortium). Plaintiff alleged, "the background screen grade of '05' resulted in Plaintiff's denial of employment with Defendant JCL and any other participating Contractor Employers and denial of assignment to Defendant Air Products[.]" Complaint ¶ 83.

- Is an "Owner" and participant in DISA and NABSC's consortiums that "accepts the programs' background screen as valid." *See* Complaint ¶ 45(i); *id.*, Exh. 1, NABSC Policy at 8-9 (App. A); *id.*, Exh. 2, DISA Policy at 7 (App. A).

- Set a maximum background screen score for potential employees (on the 00-07 scale set forth by the policies).  *See* Complaint ¶¶ 48-49, 51,

---

[2]     Where Plaintiff "lumps all together" (MTD at 14:18-19) Defendants, it is because implicit in the rules of the Consortium to which the Defendants belong is the conclusion that they are acting in concert. *See, e.g.*, Complaint ¶¶ 38, 45. Here, Plaintiff's Complaint more than puts Air Products on notice of "exactly what they are accused of doing wrong." *See Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010); *see* Complaint ¶¶ 45(i), 48-49, 51, 67 70, 83, 88, 90, 93, 95-96, 129, 131.

129; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B).

- Denied Plaintiff employment at Air Products' site because of the "inactive" status she received based on Air Products' maximum score. *See* Complaint ¶¶ 48, 51, 88, 90, 93, 95-96; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.* at 2 ("A Contractor Employer must not assign a Contractor Employee to an Owner's facility if the individual has an Inactive status for that Owner's site."); *id.*, Exh. 2, DISA Policy at 18 (App. B); *id.* at 2 (same); *id.*, Exh. 4, Adverse Action Letter (Consortium). The "Pre-Adverse Action Letter (Consortium)" and "Adverse Action Letter (Consortium)", Complaint, Exhs. 3-4, are more than sufficient to meet the plausibility standard that Plaintiff's denial of employment from Air Products was the result of Consortium policies that Air Products implemented with other defendants.

- Deemed Plaintiff ineligible to work at Air Products and JCL because Plaintiff was assigned a "05" score that exceeded Air Products' maximum score. *See* Complaint ¶¶ 48-49, 51; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B).

- As an Owner who set the maximum background screen score, could have granted Plaintiff a waiver or exemption but declined to do so. *See* Complaint ¶¶ 70, 72; *id.,* Exh. 1, NABSC Policy at 6; *id.*, Exh. 2, DISA Policy at 6.

- Could view Plaintiff's "inactive" status through the DISA and NABSC databases. Complaint ¶¶ 67, 131; *id.,* Exh. 1, NABSC Policy at 4; *id.*, Exh. 2, DISA Policy at 4.

- Relied on her "inactive" status to deny her access to the site. Complaint ¶ 131.

Because Plaintiff alleges these facts and attaches corroborative documents to the Complaint, she has plainly satisfied her pleading obligations and "raise[d] a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. The exhibits provide in part:

- "Industrial facility Owners voluntarily decide if their site(s) will participate in the Program." *See* Complaint, Exh. 1, NABSC Policy at 2; *id.*, Exh. 2, DISA Policy at 2.
- "Owners will determine which contract companies (including subcontractors) will be included in the Program, and establish their own site background screening security requirements (maximum background screen grade). Participating Owners will communicate their decision to participate in the Program to affected Contractor Employers."
  Complaint, Exh. 1, NABSC Policy at 2; *id.*, Exh. 2, DISA Policy at 2.

Based on Plaintiff's experience and the documents attached as Exhibits, Plaintiff alleges that Air Products is such an Owner. Complaint ¶ 45(i). Ignoring these express allegations, Air Products contends, "Plaintiff speculates without any factual allegations . . . that Air Products is an 'Owner'." MTD at 16. This contention willfully ignores the foregoing express allegations and the reasonable inferences the Court can draw from them. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Furthermore, these inferences are supported by additional allegations in the Complaint, including: (1) Plaintiff's background check was run by DISA for the job at Air Products, *see* Complaint ¶¶ 46, 79, 83, 89; *id.*, Exhs. 3-4; (2) DISA is the company authorized by the Consortium policies to perform background screening, *see* Complaint ¶¶ 45(iv), 46, 48; (3) the "Pre-Adverse Action Letter (Consortium)" and "Adverse Action Letter (Consortium)" in response to the background check for joint employment by Air Products and JCL are from "the Consortium" and titled as

such, *see* Complaint ¶¶ 90-93; *id.*, Exhs. 3-4; (4) the Consortium and its policies define an Owner as the owner of an industrial facility that participates in the Programs and accepts the Programs' screen as a valid background screen, Complaint, ¶ 45(i); *id.*, Exh. 1, NABSC Policy at 8-9 (App. A); *id.*, Exh. 2, DISA Policy at 7 (App. A); and (5) Air Products meets this definition, *id.* at ¶ 45(i).

Unlike the "unfounded conclusions" or "merely conclusory" allegations in the cases Defendant cites, *see* MTD at 16, Plaintiff's allegation that Air Products is an Owner is amply supported by specific facts and four separate documents. These allegations more than allow the Court to draw the "reasonable inference" required by the plausibility standard. *See Iqbal*, 556 U.S. at 678.

**B.      Plaintiff Alleges Facts That Plausibly Show Air Products Is an "Employer" Under California Law**

Plaintiff alleges facts that do far more than plausibly show that Air Product is an employer under California law, as set forth by the California Supreme Court in *Raines v. U.S. Healthworks Med. Grp.*, 15 Cal. 5th 268 (2023). In *Raines*, the California Supreme Court clarified the meaning of "employer" as used in the FEHA. *Id.* at 273. Under the FEHA,[3] the term "employer" includes "any person regularly employing five or more persons, *or any person acting as an agent of an employer, directly or indirectly*." *Id.*; *see also* Cal. Gov't Code § 12926(d). The California Supreme Court concluded that "an employer's business entity agents can be held directly liable under FEHA for employment discrimination . . . when the business-entity agent has at least five employees and carries out FEHA-regulated activities on behalf of an employer." *Raines*, 15 Cal 5th at 268. In reaching this decision, the Court considered the important public policy at issue: "If a business entity contracts with an employer to provide services that will affect that employer's employees, and

---

[3]      The Fair Chance Act is a part of the FEHA. *See* Cal. Gov't Code §§ 12940-12954 (setting forth as part of unlawful employment practices violations of § 12952, the Fair Chance Act); *see also* 2 Cal. Code Regs. § 11017.1(h).

if, in providing those services, the business-entity agent violates FEHA's antidiscrimination policies, causing injury to the employer's employees, it is consistent with sound public policy to treat the business entity as an employer of the injured employees for purposes of applying the FEHA." *Id.* at 288; *see also Raines v. U.S. Healthworks Med. Grp.*, No. 19-CV-1539-DMS-DEB, 2024 WL 3850812, at *10-11 (S.D. Cal. Aug. 16, 2024). The business entity at issue was a medical screening company that conducted preemployment screenings as an agent of plaintiffs' prospective employers. *Id.* at 274.

Air Products attempts to circumvent this controlling precedent with non-binding precedent that pre-dates and likely contradicts the California Supreme Court's decision, *Canterberry v. Acara Solutions, Inc.*, No. 20-CV-02361-KJM-KJN, 2022 WL 317002 (E.D. Cal. Feb. 2, 2022). *See* MTD at 11-13. In doing so, Defendant misstates the law and the facts. Defendant's argument was explicitly rejected by the district court implementing the California Supreme Court's *Raines* decision. *See Raines*, 2024 WL 3850812, at *10-11 (rejecting that "liability can only be established after Plaintiffs make a showing that USHW [the medical screening company] was not only a business-entity, but also acted under the direction and control of the referring employer").

Even if *Canterberry* is still good law, it is inapplicable here. The *Canterberry* court's chief reason for granting the motion was that plaintiff was already working for Acara, which meant he was not covered as an "applicant" under the Fair Chance Act.[4] *See* 2022 WL 317002, at *2 ("Canterberry was an employee of Acara before

---

[4]    Recent California regulations call into question the *Canterberry* court's determination that the Fair Chance Act only protects applicants, not existing employees, by defining "applicant" to include "individuals who have been conditionally offered employment, even if they have commenced employment when the employer undertakes a post-conditional offer review and consideration of criminal history; existing employees who have applied or indicated a specific desire to be considered for a different position with their current employer; and an existing employee who is subjected to a review and consideration of criminal history because

his conviction was uncovered . . . thus his claims cannot have arisen in his capacity as an applicant to Acara."). Additionally, because the *Canterberry* plaintiff was already working for Acara, he was "not deterred from applying to Acara." *Id*. Here, Plaintiff specifically alleges that she is "not eligible for employment at any oil refinery participating in Defendants DISA, NABSC, or HASC's Programs or Consortiums." Complaint ¶ 96; *see id.* at ¶ 80. She further alleges that she "has repeatedly been informed that she is disqualified from employment with Owners who participate in Defendants DISA, NABSC, and/or HASC's Programs," which includes Air Products, and "has not been able to obtain employment in the refinery industry and *is discouraged from applying for jobs*[.]" *Id.* at ¶ 110 (emphasis added). In fact, Plaintiff applied for and was denied employment at Air Products. *See* Complaint ¶ 83 ("the background screen grade of '05' resulted in Plaintiff's denial of employment with Defendant JCL and any other participating Contractor Employers and denial of assignment to Defendant Air Products"); *see also id.* at ¶¶ 88, 90, 93. Therefore, *Canterberry* should be distinguished.

Next, again relying on *Canterberry*, Air Products focuses on the fact that Plaintiff did not apply for a position directly with Air Products or receive her job offer and adverse action letters directly from Air Products. *See* MTD at 12-13. This argument fails in light of *Raines*, where the entity held liable as an "employer" under California law had no direct employment relationship with plaintiffs and was not the one to revoke a job offer. *See* 15 Cal. 5th at 274 (plaintiff received job offer and revocation from employer, not business entity). To the extent *Canterberry* defines "employer" narrowly, as Defendant argue it does, *see* MTD at 12-13, it is overruled by the more recent and binding California Supreme Court precedent in *Raines*.

Defendant goes on to falsely state that "Plaintiff never alleged that Air

of a change in ownership, management, policy, or practice." 2 Cal. Code Regs. § 11017.1(j)(1).

Products . . . carried out FEHA or FCA-regulated activities on behalf of JCL." MTD at 12 (internal alterations omitted). On the contrary, Plaintiff stated with particularity that "each Defendant conducted or facilitated the administrative functions associated with the hiring and firing of prospective employees, such as background checks, which are FEHA and Fair Chance-Act regulated activities." Complaint ¶ 122; *see also id.* at ¶¶ 158, 168. Plaintiff specifically identified the FEHA-regulated activities that Air Products carried out.

First, Air Products determined the criteria for hiring, what is indisputably a FEHA-regulated activity, by blocking access to employment at its site, *see* Complaint ¶¶ 48-49, 51, 70, 129; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B); *id.*, Exh. 4, Adverse Action Letter (Consortium). Second, Air Products set the criteria for hiring by setting a maximum background screen score with respect to Plaintiff's conviction history, *see* Complaint ¶¶ 48-49, 51, 129; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B), and in doing so, determined that any convictions above a certain score and of a certain type disqualify Plaintiff from employment at their sites. *See Mobley v. Workday, Inc.,* No. 23-CV-00770-RFL, 2024 WL 3409146, at *6 (N.D. Cal. July 12, 2024) ("Evaluating and dispositioning candidates are at the core of the traditional employment functions that the anti-discrimination laws seek to address."); Complaint, Exh. 1, NABSC Policy at 16-17 (setting forth scores and associated convictions). Ultimately, Air Products prohibited JCL from hiring Plaintiff because of her score and "inactive" status. *See*, *e.g.*, Complaint, Exh. 1, NABSC Policy at 2 ("A Contractor Employer must not assign a Contractor Employee to an Owner's facility if the individual has an Inactive status for that Owner's site."). Air Products "determine[s] which contract companies . . . will be included in the Program, and establish[es] their own site background screening security requirements (maximum background screen grade)." *Id.*; *id.*, Exh. 2, DISA Policy at 2. Finally, and perhaps most importantly, Air Products had the "*sole*

discretion"—with no input or judgment from JCL, the nominal employer—to grant Plaintiff a waiver or exemption from the maximum cut-off score it set, which would have allowed her to work at their site for JCL (and jointly, for Air Products). *See* Complaint ¶¶ 70, 72; *id.,* Exh. 1, NABSC Policy at 6; *id.*, Exh. 2, DISA Policy at 6. JCL delegated these traditional employer functions related to hiring and firing and evaluating background checks to Air Products, as laid out in the Consortium Policies. *See* Complaint ¶¶ 48-49, 51; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B). As a result, Air Products "carrie[d] out FEHA-regulated activities on behalf of an employer." *See Raines*, 15 Cal. 5th at 273, 288; *see also Raines*, 2024 WL 3850812, at *10-11.

Finally, California's regulations,[5] which state, "A client employer violates this section by instructing labor contractors or union hiring halls to refer only workers without conviction records . . ." 2 Cal. Code Regs. § 11017.1(d)(4), further support the conclusion that Air Products is a covered employer. By setting a maximum score, the client employer, Air Products, instructed JCL, the labor contractor, not to refer workers with certain (or perhaps any) conviction records. *See* Complaint ¶¶ 48-49, 51, 129.

### C.    Defendant's Motion Is Silent as to Air Products' Potential Liability as a Joint Employer

Even assuming *arguendo* that Air Products is not an "employer" under California law, it is still subject to liability as a joint employer. However, Air Products fails to address this *entirely* in its Motion, which independently justifies denial. *See City of Shelby*, 574 U.S. at 12.

---

[5]    Courts give considerable weight to an administrative agency's construction of its regulations and statutes, as well as deference to the agency's administrative interpretation. *See Jimenez v. U.S. Cont'l Mktg., Inc.*, 41 Cal. App. 5th 189, 196–97 (2019).

Air Products can be found liable as an employer under at least two of "three alternate definitions" of the term employ: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010); *see also* 2 Cal. Code Regs. § 11017.1(j)(2) (under the Fair Chance Act and FEHA, "[e]mployer includes . . . any direct and joint employer").

Under the first definition, it is sufficient to show that the putative employer exercised control over either wages, hours, or working conditions. *Martinez*, 49 Cal. 4th at 71-72, 76. For example, an employee could have multiple employers "when one entity (such as a temporary employment agency) hires and pays a worker, and another entity supervises the work." *Id.* at 76. When assessing whether an entity has control over workers hired by another entity, courts have considered whether that entity "controls the [location] where Plaintiffs work," *Torres v. Air to Ground Servs., Inc.*, 300 F.R.D. 386, 397 (C.D. Cal. 2014), whether it provides Plaintiffs with tools and supplies, *id.*, whether the Plaintiffs work alongside employees of the entity's employees, *id.*, and whether the Plaintiffs perform work exclusively for that entity's benefit. *Id.* (citing *Martinez*, 49 Cal. 4th at 76). Here, the Complaint alleges facts that "[d]uring the [job] assignment, the Contractor Employee remains the direct employee of the Contractor Employer but is directed, supervised, and otherwise controlled by the Owner while on its premises." *See* Complaint ¶ 65. As such, Air Products both "controls the [location] where Plaintiffs work, *Torres*, 300 F.R.D. at 397, and supervises the work, *Martinez*, 49 Cal. 4th at 76.

Under the "suffer or permit" definition, the second test set forth in *Martinez*, an entity is an employer if it "had the power to prevent plaintiffs from working." 49 Cal. 4th at 70. This standard is "exceptionally broad." *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 952 (2018). "[T]here is no question that the [suffer or permit] standard was intended to cover a variety of entities that have a relationship with a worker's primary employer, for example, a larger business that contracts out

some of its operations to a subcontractor but retains substantial control over the work." *Id.* at 945 n.17. "A proprietor who knows that persons are working in his or her business without having been formally hired . . . clearly suffers or permits that work by failing to prevent it, while having the power to do so." *Martinez*, 49 Cal. 4th at 69. The important question is whether the entity has "the power to prevent plaintiffs from working." *Martinez*, 49 Cal. 4th at 70.  Here, Air Products had the power to prevent – and actually prevented – Plaintiff from working for JCL because it set a maximum background screen score and failed to provide a waiver or exemption, which are under its sole discretion. *See supra* § II(A); *see*, *e.g.*, Complaint ¶¶ 48-50, 70-72, 129, 170, 190-192; *id.*, Exh. 1, NABSC Policy at 6 & 10; *id.*, Exh. 2, DISA Policy at 6 & 18.

Moreover, cases interpreting Title VII, also support the conclusion that Plaintiff has alleged facts sufficient to establish joint employer status. *See, e.g.*, *Covington v. International Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013) (both nominal employer and school district that chooses time and date of games and pays officials for work during games may be held liable as joint employers under Title VII); *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 216 (3d Cir. 2015) (where employee was hired and assigned to employer by temporary staffing agency, but the other entity trained, supervised, and "ha[d] ultimate control over whether [plaintiff] was permitted to work at its store," that entity may also be sued under Title VII); *Butler v. Drive Automotive Industries of America, Inc.*, 793 F.3d 404, 409-11 (4th Cir. 2015) (joint employer doctrine properly applies in Title VII context allowing both the staffing company that employed the plaintiff and the entity to which she was assigned to work to be jointly liable for the workplace harassment).

### D.   Plaintiff Alleges Facts That Plausibly Show Air Products Is Liable as a Third-Party Interferer

Because Plaintiff has already established that Air Products could plausibly be

found liable under FEHA and the Fair Chance Act as joint or statutory employer, the

Court need not consider whether the allegations plausibly suggest that Air Products

could be found liable as a third-party interferer. However, Plaintiff sets forth a third

theory for relief, one that Defendant's Motion addresses only in a scant footnote:

"Nor has Plaintiff plead facts that would establish Air Products as a 'third party

interferer' for the same reason as stated repeatedly herein, Plaintiff fails to plead that

Air Products instructed or directed JCL to conduct a background check on Plaintiff

or otherwise had responsibility for JCL's actions." MTD at 14, n.14. Defendant

again mischaracterizes the relevant law.

　　　　"In interpreting California's FEHA, California courts often look for guidance

to decisions construing federal antidiscrimination laws, including title VII of the

federal Civil Rights Act of 1964." *Raines*, 15 Cal. 5th at 282 (internal alterations and

quotation marks omitted). The Ninth Circuit has long held that a direct employment

relationship is not necessary for Title VII's anti-discrimination protections to apply.

*See Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980).

Instead, an entity that is not a plaintiff's direct employer is nonetheless liable if it

discriminatorily interferes with or forecloses an individual's employment

opportunities. *See Association of Mexican-American Educators v. California*, 231

F.3d 572, 580 (9th Cir. 2000); *see also Gomez v. Alexian Bros. Hosp. of San Jose*,

698 F. 2d 1019, 1021 (9th Cir. 1983) (finding liability under Title VII if a third party

"interferes with an individual's employment opportunities with another employer")

(citation omitted). Interference is the relevant standard–not instruction, direction, or

otherwise having responsibility. *See Wilson v. Timec Servs. Co., Inc.,* No.

223CV00172WBSKJN, 2023 WL 3436900, at *3 (E.D. Cal. May 12, 2023) (finding

that third-party could be held liable as an interferer where its policy placed

employees on "inactive" status based on positive drug test results and blocked access

to numerous employment opportunities in oil refinery industry)*; see also Raines*,

2024 WL 3850812, at *10-11 (rejecting that third-party business entity must have

acted under the direction and control of the referring employer). Air Products ignores this standard.

Here, Plaintiff alleges multiple examples of Air Products' discriminatory interference with Plaintiff's access to employment. *See supra* § II(A). In fact, blocking access to Air Products' site is alone sufficient to sustain a third-party interferer claim. The D.C. Circuit Court, reversing summary judgment for a non-employer hospital under Title VII, reasoned that the third-party hospital "control[s] the premises upon which [the] services were to be rendered, including [plaintiff's] access to the [patient-employer] for purposes of the initiation of such employment" and therefore can be a third-party interferer. *See Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1342 (D.C. Cir. 1973) (finding that although the patient was the employer who was responsible for compensation and termination of services, the hospital could block access to employment); *see also Pao v. Holy Redeemer Hosp.,* 547 F. Supp. 484, 494 (E.D. Pa. 1982) (holding that the "Hospital had the same capacity as the defendant in *Sibley* to control the plaintiff's access to those prospective patients who are his ultimate 'employers'" and that plaintiff's access to other hospital facilities and other patients was not relevant). Air Products denied Plaintiff access to its site. *See* Complaint ¶¶ 48-49, 51, 70, 129; *id.,* Exh. 1, NABSC Policy at 10 (App. B); *id.*, Exh. 2, DISA Policy at 18 (App. B). Because Air Products is separately liable as a third-party interferer, its Motion should be denied.

## III.  PLAINTIFF'S AIDING AND ABETTING CLAIM IS SUFFICIENTLY ALLEGED

Plaintiff has also pleaded facts sufficient to support her claim for aiding and abetting. Defendant argues that the claim should be dismissed because Plaintiff "failed to plead that Air Products instructed or directed JCL to conduct a background check . . . or otherwise had responsibility for JCL's actions," failed to "plead sufficient specific wrongful actions that Air Products 'assisted in or encouraged'" a FEHA violation, and "merely lump[ed] Air Products with other defendants, while

making speculative and conclusory statements." *See* MTD at 12-13. But Defendant's arguments muddle the standard for an aiding and abetting claim, which does not require "instruct[ion]" or "direct[ion]" or "responsibility for" other defendants' actions. *See* Cal. Gov't Code § 12940(i) (making it unlawful for "any . . . person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so").

Under the aiding and abetting provision of the FEHA, a non-employer can be held vicariously liable for an employer's FEHA violation. In fact, the sole case Air Products cites, *Alch v. Superior Court,* 122 Cal. App. 4th 339, 389-91 (2004), makes clear that Plaintiff need only "as a minimum, allege the identity of the aider and abettor, knowledge that the primary violator's conduct constituted a breach of duty, and how the named defendant *assisted in or encouraged* the predicate violation." *Alch*, 122 Cal. App. 4th at 389 (emphasis added). California law requires only assistance or encouragement—not leadership through direction or instruction as Defendant argues. *See id.*; *cf.* MTD at 12-13.

Here, Plaintiff (1) identified Air Products, *see*, *e.g.*, Complaint ¶¶ 19, 45(i), 48, 67; (2) alleged that Air Products knew that Plaintiff was denied employment with JCL at Air Products' site, Complaint ¶¶ 129, 131, and knew that DISA, JCL, and HASC's actions, as laid out in the background screening policy, *see* Complaint, Exh. 1, NABSC Policy & Exh. 2, DISA Policy, constituted violations of Plaintiff's rights under the Fair Chance Act and the FEHA, including discrimination,[6] Complaint ¶¶ 126-129, 131, 188, 190, 192; and, (3) alleged that Air Products assisted in and encouraged these violations in at least five ways: (a) designating a maximum

---

[6]     A disparate impact discrimination claim under Title VII does not require an intent to discriminate. *See Blake v. City of Los Angeles*, 595 F.2d 1367, 1375 (9th Cir. 1979) ("No inference of discriminatory purpose need be drawn for the statistics to establish prima facie discrimination, because discriminatory intent need not be shown in Title VII actions.").

background screen score for access to their sites and employment, Complaint ¶¶ 48-50, 129, 190, 192. Exh. 1, NABSC Policy at 10 (App. B); Exh. 2, DISA Policy at 18 (App. B); (b) accessing Plaintiff's "inactive" status in the DISA and NABSC databases, Complaint ¶¶ 67, 131; (c) receiving the score of "05" assigned to Plaintiff, Complaint ¶¶ 95, 129; (d) failing to use the waiver it has the *sole* discretion to issue to allow Plaintiff access to their site and override Plaintiff's disqualification, Complaint ¶¶ 70, 72, Exh. 1, NABSC Policy at 6, Exh. 2, DISA Policy at 6; and, (e) adopting a background screening policy and participating in a consortium that fails to make an individualized assessment, Complaint ¶¶ 38-39, 45-51, 188; *see supra* § II(A).

Under Defendant's own authority, Plaintiff has more than met her burden.[7] *See also Gibson-Jones v. Berkel & Co. Contractors*, No. C07-6440 WDB, 2008 WL 782568, at *4-5 (N.D. Cal. Mar. 21, 2008).  In fact, the *Alch* court determined it would not "require the same specificity" Defendant demands, with "each [plaintiff] pleading how each agency assisted or encouraged particular discriminatory acts against him or her individually—in order to bring a classwide claim for aiding and abetting" because their "claims are based upon allegations that each agency assisted each employer in carrying out a systemic policy of age discrimination in hiring[.]" *Alch,* 122 Cal. App. 4th at 389. Here too, Plaintiff's claims are based on a systemic

---

[7]    Moreover, under the NABSC and DISA Policies, *see* Complaint, Exh. 1 & 2, the Court could reasonably infer that Air Products not only assisted and encouraged, but actually coerced JCL into revoking Plaintiff's job offer because the Policies prohibit a Contractor Employer from assigning an employee to an Owner's facility if the individual has an inactive status.  *See* Complaint, Exh. 1, NABSC Policy at 2 ("A Contractor Employer must not assign a Contractor Employee to an Owner's facility if the individual has an Inactive status for that Owner's site."); *id.* at 6 ("Participating Contractor Employers shall not knowingly use the services of any individual on Owner's premises who does not meet the Owner's site background screen security requirements without written approval from the Owner."); *id.*, Exh. 2, DISA Policy at 2; *id.* at 6.

1
2
3

policy of discrimination in hiring, perpetuated through the Consortium and business relationships Air Products has established with the other defendants. *See* Complaint ¶¶ 3, 4, 38, 39, 45(i), 48, 49; *id.*, Exh. 1; *id.*, Exh. 2.

4
5

## IV.    IF THE COURT DETERMINES THAT A CLAIM IS NOT ADEQUATELY PLED, IT SHOULD GRANT LEAVE TO AMEND

6
7
8
9
10
11
12
13
14

If the Court determines that plaintiff has not adequately pled some portion of the operative complaint, the Court should grant leave to amend. When a complaint is deemed defective, the court "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Mie Yang v. Francesca's Collections, Inc.*, No. 17-CV-04950-HSG, 2018 WL 984637, at *2 (N.D. Cal. Feb. 20, 2018) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (leave to amend should be "freely granted when justice so requires.") (quotation and citation omitted).

15
16
17
18
19
20
21
22
23
24

Here, if the Court determines insufficient facts have been pled, the Court would not be able to conclude that any defects "could not possibly be cured." *Mie Yang*, 2018 WL 984637, at *2. Plaintiff is able to plead additional facts that would further indicate that Air Products is an employer, joint employer, third-party interferer, and aider and abettor. For example, Plaintiff has learned that Air Products requires a "DISA screening" under its "Required Abilities and Conduct" for positions it directly hires in Long Beach, California. This relates to Plaintiff's allegations regarding Air Products' denial of employment, the role of Air Products in the consortium, and Air Products' business relationships with the other defendants, including DISA.

25

## CONCLUSION

26
27
28

For the foregoing reasons, the Court should deny Air Product's Motion to Dismiss in its entirety. Alternatively, Plaintiff respectfully requests leave to amend to address any curable deficiencies the Court may identify.

Dated: November 18, 2024                Respectfully Submitted,

                                       LEGAL AID AT WORK
                                       OLIVIER & SCHREIBER PC
                                       ROOT & REBOUND

                                       */s/ Stacy Villalobos*
                                       Stacy Villalobos (SBN 306710)

                                       *Attorneys for Plaintiff*
                                       *JANE ROE*

*Additional Counsel for Plaintiff:*

Joshua Kim (SBN 257260)
jkim@rootandrebound.org
Amanda Carlin (SBN 348230)
acarlin@rootandrebound.org
ROOT & REBOUND
1610 Harrison Street, Ste. E-East
Oakland, CA 94612
Tel: (510) 225-6983

Rachel Bien (SBN 315886)
rachel@os-legal.com
Owen Monkemeier (SBN 336476)
owen@os-legal.com
OLIVIER & SCHREIBER PC
595 E. Colorado Blvd., Suite 418
Pasadena, CA 91101
Tel: (415) 484-0980

1

## **CERTIFICATION**

2

3      The undersigned counsel of record for Plaintiff Jane Roe, certifies that this

4  brief contains 6,744 words, which complies with the word limit of L.R. 11-6.1.

5

6  Dated: November 18, 2024          By:    */s/ Stacy Villalobos*

7                                            Stacy Villalobos

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28